**BRANCH BANKING AND TRUST COMPANY, Plaintiff,**

v.

**DEUTZ–ALLIS CORPORATION and Deutz–Allis Credit Corporation, Defendants.**

**No. 87–77–CIV–4.**

United States District Court,
E.D. North Carolina,
New Bern Division.

June 1, 1988.

W. Daniel Martin, III, Ward & Smith, P.A., Greenville, N.C., for plaintiff.

Benjamin Thompson, Lytch & Thompson, Dunn, N.C., for defendants.

## ORDER

WALLACE W. DIXON, United States Magistrate.

This case involves a dispute between plaintiff (BB & T) and defendants (DAC) over which party possesses a prior perfected security interest on funds held by defendants created by DAC's repurchase of tractor parts and inventory from one of its former dealers, Sanderson's, Inc. (Sanderson). Plaintiff claims that on May 9, 1984, Sanderson's predecessor in interest executed and delivered to plaintiff a security agreement covering the tractor parts and inventory. This agreement was allegedly executed to secure the repayment by Sanderson's predecessor of a loan evidenced by a promissory note of the same date. Defendants opine, however, that DAC repurchased the tractor parts and that, as a result, they possess a superior perfected security interest in the funds predicated on a series of events and agreements dating back to 1971. Suit was initiated in state court by complaint filed July 10, 1987, and removed to this court on August 6, 1987.

On December 24, 1987, plaintiff served upon defendants a combined set of Requests for Admissions, Requests for Production of Documents and Interrogatories. On January 28, 1988, defendants served plaintiff with their response and answers. This matter is now before the court on defendants' motion to withdraw one of its admissions contained in the January response, pursuant to Fed.R.Civ.P. 36(b). Plaintiff has responded, thus, the issue is ripe for disposition.

The ultimate question in this case is whether plaintiff possesses a perfected security interest superior in right to any similar interest held by defendants. In order to resolve this issue, two sub-issues must first be decided: (1) whether plaintiff holds a perfected security interest in the Sanderson inventory and farm equipment and, therefore, in the proceeds and (2) whether defendants possess a perfected security interest in the funds as well. Obviously, if either party lacks a perfected security interest in the funds in controversy, the ultimate question for disposition in this case is easily resolved. If not, the court will have to determine whose rights are superior and, thus, whether defendants indeed owe plaintiff the amount ($153,696.80) representing the net proceeds credited by DAC for repurchase of the Sanderson tractor parts.

Not surprisingly, plaintiff's Requests for Admissions were aimed at dispositive answers to all of the above questions. In their answers, defendants admitted: (1) that on May 9, 1984, Sanderson granted plaintiff a security interest in its inventory and parts, including the proceeds thereof; (2) the genuineness of a Uniform Commercial Code (UCC) financing statement reflecting plaintiff's security interest; (3)

that the original of the UCC financing statement was filed in the Register of Deeds Office in Duplin County, North Carolina, on May 11, 1984, and, most critically; (4) that when the original financing statement was filed on May 11, 1984, plaintiff thereafter held a perfected security interest in the Sanderson inventory and parts. This last request, Request No. 6, is the response now at issue.

The sum total of defendants' admissions have the effect of leaving in question only the sub-issue of whether defendants possessed a perfected security interest in the same parts and proceeds as well as the ultimate issue of who possessed the superior interest. What the admissions eliminated was any factual dispute concerning the sub-issue of whether plaintiff possessed a perfected security interest—that question being answered in the positive. After filing its January, 1988, responses, defendants, as well as plaintiff, engaged in on-going discovery concerning the remaining two issues. Resolution of those matters apparently is fairly complex, involving analysis of a number of different security agreements, financing statements, dealer agreements, and transfer and assignment agreements dating as far back as 1971. *See* Defendants' April 28, 1988, Memorandum of Law at 2–5.

Defendants, by their present motion, seek leave to withdraw their admission of Plaintiff's Request No. 6. Defendants now wish to deny the request and, thus, interject back into the case the issue of whether plaintiff held a perfected security interest in the Sanderson parts as of May 11, 1984. Resolution of defendants' motion involves application of the standard for withdrawal delineated in Fed.R.Civ.P. 36(b) and, although the issue is close, I resolve the matter in favor of the plaintiff for the following reasons.

■ The purpose of requests for admissions, Fed.R.Civ.P. 36(a), is to expedite trial by establishing certain material facts as true, thus, narrowing the range of issues for trial. *Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1245 (9th Cir.1981); *Keen v. Detroit Diesel Alli-son*, 569 F.2d 547, 554 (10th Cir.1978). As a result, resort to this discovery device often engenders a substantial savings of time and expense, both for the litigants and the court. Facilitation of the expeditious resolution of factual issues is an important consideration in the equitable and efficient administration of justice, particularly for backlogged federal civil courts. *See Morris v. Russell, Burdsall and Ward Corp.*, 577 F.Supp. 147, 151 (N.D.Ohio 1983).

Given the heightened significance recently attached to diligent pre-trial preparation by counsel, requiring a focus on the genuine issues of material fact in dispute, it is hardly surprising that the 1970 amendments to Fed.R.Civ.P. 36(b) provide that any matter admitted under Rule 36(a) is "conclusively established" for the litigation absent court-allowed withdrawal or amendment of the admission. "In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial...." Advisory Committee Note to Fed. R.Civ.P. 36(b). The reason for this rule is obvious: unless the party securing the admission can rely on its binding nature, he cannot safely avoid the expense of preparing for litigation on that issue through discovery and beyond. *Id.* To hold otherwise would patently defeat the purpose of the rule. *Id. citing, inter alia,* Finman, 71 Yale L.J. 371, 418–426 (1962).

Recognizing that occasions will arise when the binding effect of an admission must be vitiated, Rule 36(b) provides for withdrawal or amendment of admissions. The test to be applied by the court in deciding a motion to withdraw is as follows:

Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. (Emphasis added).

As the Advisory Committee Notes state, "[t]his provision emphasizes the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice."

■ As review of the Rule 36(b) standard establishes, the decision to allow a party to withdraw its admission is quintessentially an equitable one, balancing the right to a full trial on the merits, including the presentation of *all* relevant evidence, with the necessity of justified reliance by parties on pre-trial procedures and finality as to issues deemed no longer in dispute. *See generally Westmoreland v. Triumph Motorcycles Corporation,* 71 F.R.D. 192, 193 (D.Conn.1976). In effecting this balance, considerable weight must be given the substantial interest of the parties in a complete trial on the merits. Nevertheless, "[t]here is force to the argument that [ ] courts should be cautious in permitting withdrawal or amendment of admissions." Wright & Miller, *Federal Practice and Procedure:* Civil § 2264 (1970 and Supp. 1985). *See also 999 v. C.I.T. Corp.,* 776 F.2d 866, 869 (9th Cir.1985).

■ In the case *sub judice,* on January 28, 1988, defendants unequivocally admitted in response to Plaintiff's Request No. 6 that when BB & T's UCC financing statement was filed on May 11, 1984, plaintiff thereafter held a perfected security interest in the Sanderson parts. Defendants' response was tendered to plaintiff months after the formal opening of discovery (September 22, 1987) in this matter. Thereafter, three months passed before defendants moved to withdraw their amendment and, although discovery has now been re-opened and extended, at the time of defendants' motion, discovery had long since closed under the stipulated scheduling order entered at bar on September 22, 1987.

Furthermore, notwithstanding defendants' statement in their motion for leave to amend that additional evidence obtained through discovery has now led them to reconsider their admission, neither defendants' motion nor their memorandum of law

explains, in any detail, why defendants seek to deny their prior admission and upon what "new evidence" this change of heart is predicated. Indeed, much of defendants' memorandum of law, although helpful in explaining the background of this case, is minimally relevant to the issue raised by defendants' motion.

Plaintiff surmises, and defendants' one-page reply seems to confirm, that the underlying reason for the move to deny Request No. 6 relates to the appropriateness of plaintiff's UCC financing statement, *i.e.,* whether the statements were properly and timely filed with the Register of Deeds office and with the Secretary of State. In addition, plaintiff suggests defendant may be arguing that Request No. 6 concerns a "conclusion of law" with respect to the necessity for two UCC financing statement filings and, therefore, Rule 36 does not operate to bind defendants to their admission. Although plaintiff more clearly espouses defendants' arguments than do defendants, I briefly take both of these points in reverse order.

First, as drafted, I do not read Request No. 6 to require a conclusion or statement of law. I do, however, read the request as asking for defendants' admission with respect to an "ultimate fact" on a sub-issue in the case. Notwithstanding that finding, under Rule 36(a), a request for admission can relate to "statements or opinions of fact or of the application of law to fact." Clearly, a request for admission is not improper merely because it relates to an "ultimate fact" or to an issue of fact that is dispositive of one aspect of the case. *City of Rome v. United States,* 450 F.Supp. 378, 383 (D.D.C.1978), *aff'd* 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); *In re Mack,* 330 F.Supp. 737, 738 (S.D.Tex.1970).

Second, defendants have neither alleged nor proffered any evidence to show (1) the facts which they have uncovered since their admission suggest the lack of proper UCC filings by the plaintiff or (2) the law suggesting such filings or lack thereof were improper. Indeed, at this point, defendants' argument, essentially made in one paragraph of their Reply, is conclusory at

best. Thus, unlike the case of *Morris v. Russell, Burdsall and Ward Corp., supra,* there is no affidavit, verified pleading, or other evidence at bar to suggest the admission, if left standing, would render an unjust result under the law. 577 F.Supp. at 151 (admission by plaintiff via unanswered request of defendant that plaintiff failed to file timely EEOC charge in ADEA suit is withdrawn given affidavit of plaintiff's counsel that timely charge filed, accompanied by copy of the charge). Here, there simply is no "evidence" controverting defendants' January admission.

In addition, this is not a situation in which the admission is so vital to defendants' case that it amounts to a complete concession of liability. *See Westmoreland v. Triumph Motor Co., Corp., supra.* One major sub-issue and the ultimate issue remain to be decided. If defendants' admission had effectively ended this case, I seriously doubt the parties would have engaged in substantial discovery after January and moved to extend discovery until July 1, 1988. Accordingly, the court finds plaintiff's reliance on defendants' admission reasonable. *Id.* (where defendant all but conceded liability through its admission in a contested case, the court found it unlikely plaintiff could have reasonably relied on the truth of the admission).

Third, plaintiff will be prejudiced if defendants are permitted to withdraw their admission on such a slim reed at this point in the proceedings. To allow defendants' motion would interject an entirely new and significant, albeit not dispositive, issue in the case upon which no discovery has heretofore been undertaken. Discovery, already extended one time, is to be completed by July 1. In reliance on defendants' admission, plaintiff has geared its investigative efforts at the two remaining contested issues. When a party directs its resources, fiscal, physical and otherwise, to those issues it reasonably believes are the only ones left to be resolved, an abrupt change in the status of the litigation occasioned by motion of opposing counsel, which had it occurred early on would likely have effected a distinctly different allocation of resources, should only be allowed upon a showing that the Rule 36(b) test is met by clear and convincing evidence. *See generally United States v. Lemons,* 125 F.Supp. 686, 689–90 (W.D.Ark.1954). Defendants simply have not made such a showing, either in fact or law.

Under these circumstances, this court is extremely reluctant to force a new issue into the case, unsure of whether the question is worthy of additional time and expense by the parties. After all, plaintiff has a right to an expeditious determination of its claim. *See H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 112 F.R.D. 417, 419 (S.D.N.Y.1986) (applied in Rule 15(a) context). Absent a sufficient showing as indicated above, there is a point at which the benefit derived from allowing withdrawal or an amendment of an admission is outweighted by the effect of an inevitable postponement of a final decision in the matter at a late hour. *See Bohan v. Hudson,* 115 F.R.D. 193, 195–96 (E.D.N.C. 1987). *See also* Fed.R.Civ.P. 1 ("[The Federal Rules of Civil Procedure] shall be construed to secure the just, *speedy* and *inexpensive* determination of every action.") (Emphasis added).

Finally,

"[P]rejudice aside, withdrawal of an admission should not be permitted unless the party seeking relief was careful in making the admission and diligent in asking for its withdrawal. No reasonable allocation of the burden of proving prejudice can eliminate completely the danger that withdrawal will harm a party who has relied on an admission. The argument for tolerating this danger is that we should—as a matter of fairness and justice—protect the interest of the litigants seeking relief from the admission. If this litigant has acted carelessly, however, it would be neither fair nor just to protect him at the risk of harming his opponent. Moreover, since the danger of prejudice cannot be entirely avoided, the possibility of withdrawal necessarily impairs reliance on admissions to some extent. The impairment would be greater, and the reliance less, if no showing of diligence was required.

The litigant seeking relief will be familiar with the facts relevant to diligence and therefore should have the burden of proving it. He should explain why the facts that now cast doubt on his admission were unknown to him when he made the admission...."

Finman, 71 Yale L.J. at 424–25.

In this case, the record discloses no reason why defendants, with due diligence, could not have denied plaintiff's request in January of 1988, or, if they were uncertain of how to respond, state the reasons why they could not truthfully admit or deny the matter at that time. *See* Fed.R.Civ.P. 36(a). Filings of UCC financing statements are matters of public record. Therefore, defendants could *easily* have ascertained the information necessary to accurately and quickly respond to Plaintiff's Request No. 6. The time and effort necessary to obtain such information would have been minimal, yet it was not expended by the defendants. Given these circumstances, where plaintiff was not in control of the dispositive information required by defendants to intelligently respond, the court finds plaintiff should not now be penalized for defendants' lack of diligence.

■ In sum, no absolute right exists to withdraw admissions under Rule 36(b). A *per se* rule that courts must permit withdrawal of an admission simply because it relates to an important matter in the litigation is inappropriate in light of the discretionary language of the Rule and its purpose: to narrow the issues, thereby avoiding litigation of unessential and undisputed facts. *Asea,* 669 F.2d at 1248. In a proper case, when an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b) withdrawal should be allowed. Unfortunately for defendants, that fails to describe the case *sub judice.*

Accordingly, finding withdrawal of defendants' admission will prejudice the plaintiff and will not serve the proper presentation of the merits of this case, defendants' motion for leave to amend their Response to Plaintiff's Request for Admissions is DENIED.

SO ORDERED.