**Iris McCLANAHAN, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 91–0089–A.**

United States District Court, W.D. Virginia, Abingdon Division.

Oct. 21, 1992.

---

Thomas R. Scott, Grundy, Va., for plaintiff.

William B. Poff, Roanoke, Va., for defendant.

### MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Iris McClanahan ("Plaintiff") brings this action against Aetna Life Insurance Company ("Aetna") seeking to enforce an accidental death insurance contract entered into between Plaintiff's deceased husband, Elmer McClanahan, and Aetna. The matter is presently before the court on cross motions for summary judgment and Plaintiff's motion to withdraw or amend her response to Aetna's request for admissions and to amend certain answers to interrogatories. The court has jurisdiction based on diversity of citizenship.

### I.

On March 26, 1990, Elmer McClanahan ("McClanahan") became a participant in group insurance policy number FLP–654896 issued by Aetna to Sovran Bank. This policy provided benefits in the event of McClanahan's accidental death or injury. However, the policy provided that no benefits were payable for a loss caused or con-

tributed to by, among other things, bodily or mental infirmity, disease, or suicide or a suicide attempt.

On December 6, 1990, McClanahan was found dead in the garage of his residence. Jim Cook was one of the first people to discover McClanahan's body. Cook opined that McClanahan had been working on his riding lawn mower at the time of his death. The hood of the mower was open, scattered tools were laying around the mower, and McClanahan's hands were greasy. Also, McClanahan had on glasses (which he wore only when doing "close" work) and his work clothes. Cook noted that the ignition switch of the mower was in the "on" position, and the gas tank was empty. The garage door and windows were closed. (Affidavit of Jim Cook).

Deputy Sheriff Dayton Harris ("Harris") was called to the scene and observed McClanahan lying on the floor next to a riding lawn mower in a garage beside the home. There was a small amount of blood coming from the nose and mouth, but there were no cuts about the head or neck area. The lawn mower was in the "run position" and there was no gas in the gas tank. The garage area had a strong odor of gas fumes. It was a cool day, which may have explained why the windows and door were shut. No suicide note was found. (Aetna's Exhibit B, Affidavit of Dayton Harris).

On December 20, 1990, Dr. J. Thomas Luck, the Washington County medical examiner, completed McClanahan's certificate of death. This certificate listed the cause of death as carbon monoxide poisoning. The death was classified as an accident. (Aetna's Exhibit D). Dr. Luck then forwarded this report to the Medical Examiner's office in Roanoke, Virginia where Dr. William Massello, III, the Assistant Chief Medical Examiner for the Commonwealth of Virginia reviewed it. Dr. Massello amended the death certificate and classified the death as a suicide. (Aetna's Exhibit E, Affidavit of J. Thomas Luck).

Plaintiff subsequently informed Dr. Massello that McClanahan had a history of high blood pressure. Plaintiff suggested that McClanahan suffered a stroke and then was overcome by carbon monoxide. On April 8, 1991, Dr. Massello amended the death classification on the death certificate to "Undetermined." (Aetna's Exhibit G).

On November 25, 1991, at Aetna's request, this court ordered that McClanahan's body be exhumed and an autopsy performed. The court stated that Plaintiff had a right to have an expert present at the autopsy.

On January 17, 1992, Dr. Massello examined McClanahan's body. Massello noted that the brain contained no pathologic lesions, which would have been present had there been a stroke. Massello also noted widespread fatty liver metamorphosis. The cause of death was listed as "acute carbon monoxide poisoning due to inhalation of machinery fumes." (Aetna's Exhibit I). Dr. Massello's final determination is that McClanahan's manner of death is "undetermined." (Affidavit of William Massello, III).

Dr. Louis Levy, a pathologist hired by Plaintiff, attended the autopsy. Dr. Levy diagnosed McClanahan as suffering from "large fatty liver of the alcoholic." Levy explained that persons with fatty liver of the alcoholic can have lactic acidosis which can result in increased rate and depth of breathing. Dr. Levy hypothesized that, if this occurred in the present case, McClanahan's breathing would have hastened the accumulation of carbon monoxide. However, Dr. Levy stated that this condition did not definitely occur and stated that Dr. Brown's theory regarding orthostatic hypotension, discussed below, was also reasonable. Dr. Levy opined that McClanahan did not commit suicide. He stated that McClanahan's death was the result of an accidental exposure to carbon monoxide poisoning and the cause of death was definitely not fatty liver of the alcoholic or lactic acidosis. (Affidavit of Louis Levy).

Plaintiff has also retained Dr. Robert S. Brown, a Clinical Professor of Behavioral Medicine and Psychiatry at the University of Virginia School of Medicine. Dr. Brown opined that McClanahan did not commit suicide based on the lack of suicidal tendencies, the fact that tools were scattered

around the garage giving the appearance that McClanahan was working on the mower, and that no suicide note was found. Dr. Brown stated that McClanahan may have experienced "orthostatic hypotension" prior to succumbing to carbon monoxide. Orthostatic hypotension, a sudden drop in blood pressure, may cause a person to "black out." Thus, the condition may have caused him to fall to the floor upon standing after being in a crouched position. Dr. Brown noted that this condition can occur in people taking high blood pressure medicine such as Lopressor, which McClanahan took. Dr. Brown opined that the condition known as "fatty liver of the alcoholic" did not contribute to McClanahan's death. Dr. Brown also stated that McClanahan may not have known the dangers of carbon monoxide. (Affidavit of Robert S. Brown).

Aetna has declined payment under the policy. Plaintiff brought this action on July 1, 1991, in the Circuit Court of Buchanan County, Virginia. The action was removed to this court based on diversity of citizenship. Aetna filed its motion for summary judgment on April 15, 1992. On May 15, 1992, Plaintiff filed for summary judgment and a motion to withdraw her response to Aetna's request for admissions. The court held a hearing on these motions on July 22, 1992.

## II.

■ The court will first address Plaintiff's request to withdraw or amend certain admissions and to amend certain answers to interrogatories. Aetna propounded requests for admissions to Plaintiff. Among other things, Aetna requested the following and received the indicated answers:

*Request No. 8:* Admit that Mr. McClanahan was physically capable of turning the lawn mower off before he was overcome by the carbon monoxide.

*Response:* Denied.

*Request No. 9:* Admit that Mr. McClanahan was not physically capable of turning the lawn mower off before he was overcome by the carbon monoxide.

*Response:* Admitted.

Plaintiff now seeks to amend these responses to both admissions as follows:

"Denied. The plaintiff does not know one way or the other whether her decedent was physically capable or incapable of turning the lawn mower off before he was overcome by the carbon monoxide inasmuch as this calls for a medical conclusion."

Plaintiff further requests leave to amend her answer to any interrogatory inconsistent with her proposed amendment.

Plaintiff asserts that when she was responding to the above request, she was operating under the assumption that McClanahan was unable to turn the lawn mower off before he was overcome by carbon monoxide because Dr. Brown and Dr. Levy had given theories as to how he may have become unconscious as a result of orthostatic hypotension or fatty liver of the alcoholic resulting in lactic acids. However, upon subsequent information, Plaintiff learned from Dr. Levy that his theory was only one of several reasonable ones. Plaintiff has also learned from Dr. Brown that high blood pressure is a symptom and not a disease or physical infirmity, and that orthostatic hypotension is a phenomenon which can occur from medication and is not a disease or physical infirmity.

Plaintiff also points to letter received by her counsel from Aetna's counsel prior to the autopsy stating that "if the autopsy shows that Mr. McClanahan suffered a stroke, we will accept that determination and settle the case." This statement indicated to Plaintiff that Aetna did not contend that her claim was barred by any allegation that a physical infirmity or disease caused or contributed to McClanahan's death and that the sole issue was whether he had committed suicide. Therefore, in hopes of settling the case, Plaintiff answered as she did to Requests 8 and 9.

Rule 36(b) states:

(b) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-

trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Fed.R.Civ.P. 36(b). "[T]he decision to allow a party to withdraw its admission is quintessentially an equitable one, balancing the rights to a full trial on the merits, including the presentation of *all* relevant evidence, with the necessity of justified reliance by parties on pre-trial procedures and finality as to issues deemed no longer in dispute." *Branch Banking & Trust Co. v. Deutz–Allis Corp.*, 120 F.R.D. 655, 658 (E.D.N.C.1988). "In a proper case, when an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b) withdrawal should be allowed." *Id.* at 660.

■ The test for withdrawal or amendment has two prongs. First, the court must look to whether the "presentation of the merits will be subserved" by allowing the amendment. Second, the court must address whether the withdrawal will prejudice the party that has obtained the admissions. *Harrison Higgins, Inc. v. AT & T Communications, Inc.*, 697 F.Supp. 220, 222 (E.D.Va.1988).

■ The first prong "permits withdrawal if it will facilitate the development of the case in reaching the truth, as in those cases where a party's admission are inadvertently made." 4A Jeremy C. Moore et al., *Moore's Federal Practice* para. 36.08 (2d ed. 1992); *see Reyes v. Vantage S.S. Co.*, 672 F.2d 556, 557–58 (5th Cir.1982) (withdrawal affirmed where response based on "faulty assumption" of facts); *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir.1981) (withdrawal is proper where admission is made inadvertently); *Howard v. Sterchi*, 725 F.Supp. 1572, 1576–77 (N.D.Ga.1989) (withdrawal allowed where responses made without careful consideration of the facts). The court finds that the first prong is satisfied in the present case because the withdrawal of the

response would further the presentation of the merits of the action.

Aetna bases its opposition to Plaintiff's motion to withdraw or amend on the second prong. Aetna asserts that it would be prejudiced by the withdrawal or amendment because Admissions 8 and 9 are fatal to Plaintiff's case. Aetna asserts Plaintiff has admitted facts which, when coupled with the testimony of plaintiff's experts, establish that McClanahan's death was caused or contributed to by a disease or bodily infirmity thereby excluding the death from coverage.

The court finds that Aetna will not be so prejudiced by the withdrawal or amendment that Plaintiff's request must be denied. "The prejudice referred to in the second part derives from the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered." 4A Jeremy C. Moore et al., *Moore's Federal Practice* at para. 36.08; *see Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir.1983) (stating this proposition).

Courts have recognized that, where a party all but conceded liability through its admission in a contested case, it is unlikely that the opposing party could have reasonably relied on the truth of the admission. *Branch Banking & Trust Co.*, 120 F.R.D. at 659 (citing *Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192, 193 (D.Conn.1976)). In *Westmoreland* the court stated:

It is unlikely that the plaintiff could reasonably have believed that the defendant intended to admit liability in this contested action. And if he did rely on that assumption, this court is loathe to reward what would have been an unreasonable reliance in order to glorify technical compliance with the rules of civil procedure. Had the plaintiff been able to demonstrate an actual hardship caused by the defendant's negligence, i.e., had he shown that he was now unable to obtain vital witnesses, the result would, of course, be different.

*Westmoreland,* 71 F.R.D. at 193; *see also Bergemann v. United States,* 820 F.2d 1117, 1121 (10th Cir.1987) (no prejudice in withdrawal of response since plaintiff knew that defendants challenged the issue).

When questioned by the court concerning its prejudice, Aetna's counsel was unable to articulate any prejudice other than that the admission was fatal to the plaintiff's case. Aetna has not foregone discovery in reliance on the admission, nor is Aetna now unable to obtain vital witnesses. Indeed, Aetna itself has given a response similar to the proposed amended reply when asked questions similar to number 8 and 9. In its Response to Plaintiff's Second Request for Admissions, Aetna made the following Reply:

27. Admit that Elmer McClanahan was involuntarily and physically unable to turn off the lawn mower before he was overcome by carbon monoxide fumes.

*Response:* Aetna can neither admit nor deny this assertion as it calls for a medical conclusion.

This supports the courts conclusion that Aetna was not prejudiced by relying on the response. Therefore, the court holds that Plaintiff may withdraw the answers and will substitute the amended answer in their place.

### III.

Aetna has moved for summary judgment on the grounds that: (1) as a matter of law McClanahan did not suffer an accidental death; and (2) the bodily infirmity or disease exceptions bar recovery under the policy. The court will address each ground in turn.

■ Summary judgment shall be rendered "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the court must " 'perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues.' " *Guiness PLC v. Ward,* 955 F.2d 875, 882 (4th Cir.1992) (quoting *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985)).

The standard for granting summary judgment is well defined. *See Celotex Corp. v. Catrett, Inc.,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A contract action is governed by the law of the place of the contracting, in this case Virginia. *Lackey v. Virginia Surety Co.,* 209 Va. 713, 167 S.E.2d 131, 133 (1969) (maintaining that law where contract written and delivered is controlling). The Virginia Supreme Court has stated:

The generally accepted rule is that death or injury does not result from accident or accidental means within the terms of an accident policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury.

*Patch v. Metropolitan Life Ins. Co.,* 733 F.2d 302, 303 (4th Cir.1984) (quoting *Smith v. Combined Ins. Co. of America,* 202 Va. 758, 120 S.E.2d 267, 268 (1961)). "[D]eath will be found non-accidental where an insured has deliberately exposed himself to a substantial and foreseeable risk of serious injury or death, even if death is neither intended nor certain to result." *Id.* at 304.

■ Aetna contends that starting a large riding lawn mower in a closed garage and allowing it to run is risky behavior, the foreseeable consequence of which is death or serious bodily injury. However, Plaintiff has submitted several affidavits refuting this proposition. Dr. Luck stated that McClanahan "was not and should not have been aware (as is the case with most lay persons) of the consequences of inhaling carbon monoxide fumes, an odorless gas, from a riding lawn mower...." (Affidavit of J. Thomas Luck). Dr. Brown stated that "most lay persons would not know and should not know of the dangers of carbon monoxide emanating from a lawn mower as opposed to an automobile." (Affidavit of Robert S. Brown). These statements raise a material and genuine issue of fact whether death was a substantial and foreseeable consequence of running the lawn mower in the garage. Thus, this case is distinguishable from the cases cited by Aetna dealing

with "autoerotic hanging", *Runge v. Metropolitan Life Ins. Co.*, 537 F.2d 1157 (4th Cir.1976), and heroin use, *Patch*, 733 F.2d at 302. Accordingly, the court denies Aetna's motion for summary judgment on the claim that the death was not an accident as a matter of law.

Aetna next asserts that, assuming that McClanahan was not able to turn the mower off before he was overcome by the carbon monoxide fumes, his death resulted from a disease or bodily infirmity and is excluded under the terms of the policy. Aetna asserts that, whether McClanahan was unconscious due to lactic acidosis related to fatty liver of the alcoholic or because of orthostatic hypotension caused by high blood pressure and the medication for this condition, the unconsciousness prior to the carbon monoxide was caused or contributed to by a bodily infirmity or disease. The court disagrees.

The court has allowed Plaintiff to amend her answers to Aetna's request for admissions. Therefore, Aetna's assumption that McClanahan was physically incapable of turning the lawn mower off prior to succumbing to carbon monoxide is no longer viable. While Dr. Levy and Dr. Brown have submitted theories explaining what may have occurred, Dr Levy has stated that "Mr. McClanahan may have simply succumbed to carbon monoxide, an odorless gas, without the intervention of any other condition, passed out and then died." (Affidavit of Louis Levy). This possibility is enough to create a genuine and material issue of fact for the jury. Therefore, the court denied Aetna's motion for summary judgment on this ground.

### IV.

Plaintiff has moved for summary judgment asserting that she is entitled to summary judgment on Aetna's affirmative defense of suicide in the absence of clear and convincing evidence that the insured intended to kill himself. At the hearing on these motions, the court orally denied Plaintiff's motion stating that there was a genuine and material issue of fact for a jury on this issue. The court hereby incorporates that holding and denies Plaintiff's motion for summary judgment.

### V.

For the foregoing reasons, the court grants Plaintiff's motion to withdraw and amend her response to Aetna's request for admissions. The court also denies Aetna's request for summary judgment and Plaintiff's request for summary judgment. The court will enter an appropriate Order.

ENTER: This 20 day of October, 1992.