**AMERIBANC SAVINGS BANKS, F.S.B., et al., Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, receiver for Heritage Federal Savings Bank,**

**and**

**First Stafford Development Corporation, et al., Defendants.**

Civ. A. No. 3:93CV676.

United States District Court, E.D. Virginia, Richmond Division.

May 12, 1994.

Roger Lee Gregory, Gerald William S. Carter, Clarence Northern Jenkins, Jr., Wilder & Gregory, Richmond, VA, for Resolution Trust Corp.

George Fox Trowbridge, Jr., Fairfax, VA, for Bank Ameribanc Sav. Bank, F.S.B.

Thomas Patrick Dugan, Surovell, Jackson, Colten & Dugan P.C., Fairfax, VA, for Brar Associates Stafford Ltd. Partnership.

Wyatt B. Durrette, Jr., Mary Stewart Murphy, Richmond, VA, Arnold Carmichael Moore, Jr., Durrette, Irvin, Lemons & Bradshaw, P.C., Richmond, VA, for First Stafford Development Corp., Richmond Resources, Ltd., Eddie Cantor, Mary Lee Cantor, Rob-

ert T. Cantor, Selma S. Cantor, Earl F. Leitess, Judith Leitess, Robert A. Wetzler, Joyce T. Wetzler, Abraham J. Dere, Cantor and Cantor.

## *MEMORANDUM OPINION*

SPENCER, District Judge.

THIS MATTER is before the Court on plaintiffs Ameribanc Savings Bank, F.S.B. ("Ameribanc") and Brar Associates Stafford Limited Partnership ("Brar") Motion for Partial Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Counts One through Four, against defendants Resolution Trust Corporation ("RTC"), First Stafford Development Corporation ("First Stafford"), Cantor & Cantor, Eddie Cantor, and Abraham Dere.[1]

Plaintiff Brar Associates also has filed a Motion for Leave to File Answer to Requests for Admission ("RFAs") Out of Time, pursuant to Fed.R.Civ.P. 36(b). For the reasons set forth below, the Plaintiffs' Motions will be GRANTED.

### I.

The parties' extensive memoranda set forth the details surrounding the four key events in this case: 1) First Stafford's sale of twenty-four (24) acres of land to Brar Associates in exchange for certain deeds of trust and promissory notes; 2) Heritage's loan of $975,000.00 to First Stafford and defendant First Stafford's assignment of its deed of trust and promissory notes; 3) Brar's $2.3 million loan from Ameribanc in exchange for certain deeds of trust; and 4) Brar's sale of seventeen and nine-tenths (17.9) acres to a third party, subject to Brar's right to release ten (10) acres of land from First Stafford's

lien, and the execution of a Modification Agreement by Brar and First Stafford.

On July 22, 1987, First Stafford contracted to sell over twenty-four (24) acres of land to Brar Associates for $1,650,000.00. Brar paid $438,000.00 as a down payment. The balance of the purchase price was to be paid through Brar's assumption of a first deed of trust on the property (in the amount of $186,703.98) and execution of a second deed of trust to Abraham Dere and Kay Hardy for the benefit of First Stafford (in the amount of $1,025,296.00).

Pursuant to the contract of sale, upon Brar's tender of its down payment, First Stafford agreed to release five and three-quarters (5.75) acres of land from the lien of the second deed of trust. *Ameribanc Compl.* at Exhibit A, ¶ 7(a).[2] The contract also gave Brar the right to secure the release of additional land at the rate of one acre for $75,000.00 during the five year term of the note. *RFA No. 6.* Prior to settlement, First Stafford and Brar also executed a letter agreement setting forth provisions governing partial releases, including the agreement that five and three-quarters (5.75) acres would be released in consideration of First Stafford's release of the down payment. *Aff. of Balbir Brar* at Exhibit B (Letter to Brar Assoc. from First Stafford and Eddie Cantor).

In either January or February of 1988,[3] Brar executed a deed of trust for the benefit of First Stafford securing four promissory notes in the amounts of $341,765.33, $341,765.33, $228,982.75, and $112,872.56. This deed was recorded in the Stafford County, Virginia Deed Book among the land records. *See Ameribanc Compl.* at Exhibit B.

---

1. The four causes of action for which summary judgment is sought include claims for declaratory judgment, reformation, equitable lien, and estoppel. The Plaintiffs are not seeking summary judgment on their Interference with Contractual Obligations count (Count Five) or their Fraud count (Count Six).

2. This paragraph reads as follows:
   At the time of settlement, the purchase price of $1,650,000.00 shall be paid as follows:
   (a) by cash, certified check, or by bank wire in the amount of Four Hundred Thirty–Eight Thousand and no/100 Dollars ($438,000.00) of which

the $16,500.00 deposit shall be a part. *At that time,* the Seller will release five and three-quarters (5.75) acres of land ... (emphasis added).

3. The Plaintiffs assert the deed of trust was executed at the January 20, 1988 closing. The Defendants deny this, and argue that the deed of trust was executed on February 10, 1988, but was dated January 20, 1988. This dispute has no bearing on the Court's decision in this case, but for purposes of this motion, the Court must accept the non-moving party's assertion as true.

The deed of trust, which was prepared by Eddie Cantor, and/or other members of the law firm of Cantor & Cantor, omitted the provision contained in the sales contract which allowed the release of five and three-quarters (5.75) acres in consideration for the down payment. Plaintiff Ameribanc argues either fraud or mistake was the cause for this omission, and states the deed of trust needs to be reformed. Plaintiff Brar does not allege fraudulent conduct by the Defendants.

The release provision which was included in the deed of trust stated releases were to be granted for "principal paid by Grantor, whether by regular payments or by anticipation (excluding cash paid at closing)". *Response of First Staff. to RFA No. 17.* Defendant First Stafford admits that this release language erroneously: 1) states that the cash paid at closing would not be considered in determining the amount of acreage Brar was entitled to have released, and 2) omitted Brar's right to the release of five and three-quarters (5.75) acres in consideration for its down payment. *Response of First Staff. to RFA Nos. 17–18.*

On May 5, 1989, First Stafford borrowed $975,000.00 from Heritage Savings Bank, F.S.B. ("Heritage loan"). This loan was guaranteed by Eddie Cantor, Mary Lee Cantor, and others. *RFAs No. 20–22.* First Stafford also assigned Brar's Deed of Trust and four promissory notes as collateral for the Heritage loan. *See Ameribanc Compl.* at Exhibit E. Pursuant to the Assignment Agreement, First Stafford had the right to maintain possession of the Brar notes, to exercise all rights of holder thereunder, to receive payments, and to bring suit for non-payment.[4] This Assignment and Security Agreement never was recorded among the land records or U.C.C. records of Stafford County. *RFA Nos. 34–35.*

In July, 1989, Brar borrowed $2.3 million from Ameribanc, to construct an office on a one and one-half (1.5) acre portion of the twenty-four (24) acres purchased from First Stafford. As collateral for this loan, Brar executed a deed of trust (the Ameribanc deed of trust) which was a first lien on the one and one-half (1.5) acre land parcel, and a $450,000.00 Additional Collateral Deed, which was a third lien on the twenty-two and one-half (22.5) acre remainder of the original parcel, and a second lien on an adjacent seventeen and nine-tenths (17.9) acre parcel.

In connection with this transaction, Lisa Overton, an agent of Ameribanc, contacted First Stafford about execution of certain documents necessary for the release of the one and one-half (1.5) acres.[5] Eddie Cantor, an officer of First Stafford, spoke with Ms. Overton regarding her request, and allegedly told her the promissory notes held by First Stafford had been pledged as collateral to Heritage. *Cantor Aff.* (Def. Exhibit 1). Heritage agreed to the release of the one and one-half (1.5) acres and executed a written consent to this effect.

In early 1991, Brar contracted to sell the adjacent seventeen and nine-tenths (17.9) acre parcel to a third party. The terms of this contract required that the property be transferred with clear title, free from the lien of the Ameribanc deed of trust.

Ameribanc and Brar entered into a Loan Modification and Extension Agreement regarding the sale of the nearly eighteen acre parcel. Ameribanc agreed to release its security interest in this property only certain conditions, including: a) Brar pay off the First Stafford deed of trust on the twenty-two and one-half (22.5) acre parcel; b) the nearly eighteen acre parcel remain as security for $123,000.00 of the Ameribanc debt, and the remainder of the debt ($327,000.00) be secured by the twenty-two and one-half (22.5) acre parcel; and c) the noteholders and Trustees of First Stafford acknowledge that Brar was entitled to release up to ten (10) acres from the lien of their deed of trust at that time, making the Ameribanc deed of

---

4. In fact, First Stafford actually collected payments from Brar and forwarded these to Heritage on a monthly basis.

5. Lisa Overton was an employee of Coldwell Banker Settlement & Title Services. The parties disagree whether under Virginia law, Ms. Overton's knowledge is imputed to Ameribanc. This dispute also does not impact the Court's resolution of the pending motions.

trust the first lien on ten (10) acres of the twenty-two and one-half (22.5) acre parcel.

On February 28, 1991, Brar entered into a Modification and Extension Agreement (the "Modification Agreement") with Ameribanc, which complied with the above described terms. *See Ameribanc Compl.* at Exhibit D; *Modification Agreement* at ¶ 7. In this agreement, Brar warranted that it was entitled to release, at that time, up to ten (10) acres of the land that was encumbered by the First Stafford deed of trust. *Modification Agreement* at ¶ 6(a). The President of First Stafford signed this Agreement, signifying that Brar was entitled to release the amount of land warranted. This Agreement was recorded in the Stafford County land records.

First Stafford admits that the Modification Agreement acknowledges Brar's right to have up to ten (10) acres released from the first lien encumbering the property. Defendant First Stafford argues only that the Agreement does not address whether Brar's right to release was forfeited through the Plaintiff's subsequent default. The Plaintiffs obviously agree that Defendant First Stafford either had authority to release the property from its own lien, or was an agent for Heritage and the RTC, and had apparent or express authority to release the lien.

Ameribanc asserts it had no knowledge that First Stafford had assigned the Brar promissory notes and deed of trust to Heritage Bank when the Plaintiffs' Modification Agreement was executed.[6] If the Plaintiffs had possessed this knowledge, they contend Brar would not have entered into the Modification Agreement without acquiring Heritage's consent.

In 1990, after the Brar notes had been assigned, but before the execution of the Modification Agreement, the RTC became the Conservator, and then the Receiver, for Heritage Savings. First Stafford continued to act as the servicing agent for the RTC.

Brar ultimately sold the seventeen and nine-tenths (17.9) acre parcel. As a result of the 1991 Modification Agreement, First Stafford, the purported noteholder, received $137,500.00. From these proceeds, it paid $135,000.00 to the RTC.

Brar stopped making payments to First Stafford on the promissory notes after June 20, 1991. As the collecting agent, First Stafford issued default notices to Brar. Eventually, First Stafford filed suit in the Circuit Court of Stafford County to collect the balance due on the promissory notes.

Ameribanc asserts it never was notified by either First Stafford or the RTC of Brar's default. Therefore, the Plaintiff had no opportunity to cure this problem.

On November 19, 1992, Brar requested in writing the release of ten (10) acres pursuant to the Modification Agreement. Both First Stafford and the RTC refused this request and declined to release any property from First Stafford's lien due to Brar's default. *RFA's No. 70, 71, 74.*

The principal balance due on the Ameribanc loan is $327,000.00. Interest is accruing at the rate of 8% per annum. *Aff. of Ameribanc.* At current market prices, the subject property would not have sufficient value to pay any part of the Ameribanc Deed of Trust, unless a portion of the property is released from First Stafford's lien. *RFA No. 76.* The balance due on the First Stafford Deed of Trust exceeds $850,000.00.

Based upon these facts, Ameribanc contends it is entitled to a first lien on ten (10) acres of the twenty-two and one-half (22.5) acre parcel in Stafford County. The Plaintiffs state that judgment in their favor on the lien issue will render Ameribanc's fraud claim moot. On the other hand, Heritage asserts First Stafford was not authorized to release the lien on the ten (10) acres.

## II.

■ The function of Rule 36 of the Federal Rules of Civil Procedure, which addresses Requests for Admission, is to define and limit the matters in controversy between the parties. *Branch Banking & Trust Co. v. Deutz–Allis Corp.,* 120 F.R.D. 655 (E.D.N.C.1988);

---

6. First Stafford and the RTC dispute the truthfulness of this representation. *See Aff. of Kern; Kern Dep. Tr.* at 76–78, 97–98 (Kern was a senior Loan Officer at Heritage Savings Bank); *Cantor Aff.*

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2252 (West 1970 & Supp.1994). In the appropriate circumstances, Rule 36(b) provides for the withdrawal or amendment of admissions. This section reads as follows:

Subject to the provision of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

■■■ When a party seeks leave to file untimely answers, the test to be applied by the Court is whether permitting the party to answer will aid in the presentation of the merits of the action and whether prejudice will accrue to the propounding party. *Davis v. Noufal,* 142 F.R.D. 258 (D.D.C.1992) (holding plaintiff could withdraw admissions despite pending motion by defendants for summary judgment); *McClanahan v. Aetna Life Ins. Co.,* 144 F.R.D. 316, 320 (W.D.Va.1992); *Harrison Higgins Inc. v. AT & T Communications, Inc.,* 697 F.Supp. 220, 222 (E.D.Va. 1988). The rule emphasizes the importance of having each action resolved on its merits, while at the same time assuring each party that its justified reliance upon admissions in preparation for trial will not operate to its prejudice. *Branch Banking & Trust Co.,* 120 F.R.D. at 658.

■■■ Plaintiff Brar seeks leave to amend certain admissions made by virtue of its failure to respond to Requests for Admission propounded by defendants First Stafford, Eddie Cantor, Cantor & Cantor and Abraham Dere on January 19, 1994, along with other discovery requests.[7] All of this discovery apparently was placed in a "discovery file" without ever being reviewed by Brar's counsel.

During the course of discovery, Plaintiff's counsel became aware that responses were due to the Defendants' Request for Production of Documents. Instead of reviewing this request, Plaintiff's counsel provided the entire Brar file to the Defendants.

If the discovery request had been reviewed, Plaintiff's counsel presumes he would have noticed the outstanding Requests for Admission and other discovery pleadings. Instead, it was not until May 3, 1993, that counsel for Brar learned the Defendants were claiming it had made certain admissions by default.

Plaintiff Brar states the answers it seeks to file are consistent with its pleadings and deposition testimony. Brar's counsel submits that the Defendants are not prejudiced, as they could not expect the propounded Requests for Admission to be admitted. In this case, only the Plaintiff itself would be prejudiced due to its counsel's misplacement of certain discovery documents.

The Defendants have not demonstrated that the Court granting Brar's request for leave to file late answers would substantially prejudice their ability to defend themselves on the merits of this action. Therefore, as the Court indicated at the hearing held on May 11, 1994, Plaintiff Brar's Request for Leave to File Late Answers to First Stafford's Requests for Admissions is GRANTED.

### III.

Under Rule 56(c), a motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Magill v. Gulf & W. Indus., Inc.,* 736 F.2d 976, 979 (4th Cir.1984) (quoting Fed.R.Civ.P. 56(c)); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992). "Where ... the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *United*

---

7. These pleadings include: 1) First Stafford's Request for Admissions, 2) Dere's First Interrogatories to Brar, 3) First Stafford's First Request for Production of Documents, 4) First Stafford's First Interrogatories to Brar, and 5) Cantor & Cantor's First Interrogatories to Brar.

*States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The party moving for summary judgment bears the initial burden of informing the district court of the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Any inferences "drawn from the underlying facts contained in the materials before the trial court must be viewed in the light most favorable to the party opposing the motion." *Helm v. Western Md. Ry.,* 838 F.2d 729, 734 (4th Cir. 1988).

Only after the movant's burden is met, and a properly supported motion is before the Court, must the party opposing the motion " 'set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)); *accord Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991).

The Plaintiffs ask the Court to rule they are entitled to a first lien on ten (10) acres of the twenty-two and one-half (22.5) acre parcel of land in Stafford County. They set forth several arguments in support of their position.

■ First, the Plaintiffs contend that Ameribanc has priority pursuant to the recording acts. In Virginia, documents affecting title to real estate, as well as those creating security interests, must be properly recorded in order to protect interested parties from losing priority to subsequent bona fide purchasers or lien creditors who rely upon land records. Va.Code Ann. § 55–96 (Michie 1986 & Supp.1993). In May, 1989, when First Stafford assigned its deed of trust to Heritage Savings, the Virginia Code required Heritage to disclose its interest through a marginal notation in the land records, so that subsequent creditors would have notice of this pledge. Specifically, Section 55–66.1 of the Virginia Code stated:

Whenever any debt secured on real estate ... has been assigned, transferred, or endorsed to another, in whole or in part, by the original payee thereof, such payee, assignee, or transferee or endorsee may cause a memorandum or statement of the assignment to such assignee ... to be entered on the margin of the page in the book where such encumbrance securing the same is recorded, which memorandum or statement shall be signed by the assignor, transferor or endorses, his duly authorized agent or attorney, and when so assigned and the signature thereto attested by the clerk in whose office such encumbrance is recorded the same shall operate as a notice of such assignment and transfer.

(emphasis added).[8] Such statutes are designed to protect creditors against debtors who give a deceptive appearance of ownership by retaining possession after title has passed to a third party. *Graves Construction Co. v. Rockingham Nat'l Bank,* 220 Va. 844, 263 S.E.2d 408, 413 (1980).

■ In Virginia, a lien creditor's rights are protected upon recordation, irrespective of the lien creditor's actual or constructive knowledge of conflicting interests in the property. Va.Code Ann. 55–96; *Cavalier Serv. Corp. v. Wise,* 645 F.Supp. 31 (E.D.Va. 1986) (discussing priority of federal tax liens); *Leake v. Finance One Mtg., Inc.,* (In re Snyder), 57 B.R. 438 (Bankr.W.D.Va. 1985).

■ The Defendants all have admitted that First Stafford's assignment of its deed of trust was not recorded in the land records of Stafford County or in the U.C.C. records prior to Ameribanc's execution of the Modification Agreement. Instead, the land records showed that First Stafford had the only lien

8. Although Section 55–66.1 has been repealed, the Security Agreement signed by First Stafford constitutes a "contract" under Va.Code Section 55–96, and therefore still requires recordation. Section 55–96 states:

Every such contract in writing ... shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract, deed, or bill of sale may be.

superior to Ameribanc's. In order to insure that Brar had the right to this property, Ameribanc required First Stafford to acknowledge Brar's entitlement to have the Defendant's lien released.

Neither Defendant disputed, or even addressed, the Plaintiffs' contention that the recording statutes give Ameribanc priority over Heritage's unrecorded assignment. The Court finds, therefore, that the Virginia recording statutes entitle Ameribanc to priority over the Heritage's unrecorded interest.

■ The Court also holds that First Stafford, the only party with priority ahead of Ameribanc, had clear authority to consent to the release of ten (10) acres of land from its lien. Section 7(e) of the Assignment Agreement gives defendant First Stafford this power. Specifically, this provision states:

> Until default hereunder or under the Note, Assignor shall have the right to demand, receive and receipt for payment all payments due under the Collateral Notes and shall have the right to exercise *all rights* given Assignor under the Deed of Trust (emphasis added).

Because First Stafford was not in default at the time the Modification Agreement was executed, this Defendant properly acknowledged Brar's right to the release of ten (10) acres of property from First Stafford's lien. Accordingly, Ameribanc is entitled to the priority lien it seeks on the ten (10) acres of property.

■ Second, the Plaintiffs argue that the RTC is estopped from challenging First Stafford's acknowledgement of Brar's right to release and Ameribanc should have the first lien on the disputed property based upon equitable grounds. In the matter at bar, either Heritage or the RTC arguably could have prevented the problem by recording the Assignment and Security Agreement.

The Fourth Circuit and the Virginia Supreme Court both have recognized that where one of two innocent parties must bear the loss caused by the fraud of a third party, the party who could best have prevented the loss should bear it. *See, e.g., Jacobs v. Chicago Title Insur. Co.*, 709 F.2d 3 (4th Cir.

1983). Because Heritage and RTC could have acted to avoid the loss caused, the Court finds that the RTC, in its capacity as receiver for Heritage, is estopped from denying First Stafford's authority to release the ten (10) acres.

■ Third, the Plaintiffs assert that First Stafford's obligation to release the property was not affected by Brar's failure to make required payments under the deed of trust. The Defendants disagree, and argue that Brar lost its right to have the acreage released when it defaulted on payments due.

This issue has been frequently litigated, although not in Virginia, and the majority rule weighs in the Plaintiffs' favor. Many courts have held that a mortgagor who makes payments prior to default is not prevented from enforcing his accrued rights to a partial release after default so long as his exercise of these rights does not interfere with the rights of a bona fide purchaser. *See, e.g., Burroughs v. Garner*, 43 Md.App. 302, 405 A.2d 301 (1979); *Leisure Campground & Country Club Ltd. Part. v. Leisure Estates*, 280 Md. 220, 372 A.2d 595, 598–99 (1977).

In both *Burroughs* and *Leisure Estates*, the landowners claimed a vested right, based upon their previously tendered down payments, to release acreage *after they had defaulted* under the mortgage or deed of trust. The noteholders denied the releases in each case. The Maryland Court of Appeals upheld the debtors' right to obtain the partial release of acreage, based upon these facts: 1) the payment entitling the release had been made prior to the default; 2) the mortgage document contained no specific language conditioning the release on the borrower's good standing; and 3) the absence of intervening rights acquired by a bona fide purchaser. Other courts also have adopted this three prong test as the standard to be applied in cases where a release is sought after default. *See First Equity Inv. v. United Service Corp.*, 299 S.C. 491, 386 S.E.2d 245, 248 (1989).

In this case, the deed of trust did not contain any language conditioning the release of any lien on the property on the borrower's

good standing. There also are no intervening rights which have been acquired by a bona fide purchaser. Finally, the Plaintiffs are relying upon payments made by Brar before its default to support their claim that Brar had a vested right to the release of a certain amount of acreage. Although this Court cannot be certain, it believes Virginia would adopt the majority view endorsed by two other states in this circuit, and would not follow the contrary position supported by First Stafford. Accordingly, the Court finds that Defendant First Stafford's obligation to release the property was not affected by the borrower's subsequent default.[9]

Finally, the Plaintiffs maintain that First Stafford is estopped from raising the "release barred by default" issue as to Ameribanc. This assertion rests upon an estoppel certificate which required First Stafford to give Ameribanc notice in the event of a default by Brar. Based upon the Court's previous ruling, this issue is moot, and need not be addressed.

### IV.

■ Setting aside the arguments made by Ameribanc and First Stafford, defendant RTC argues the *D'Oench Duhme* doctrine prohibits the entry of summary judgment in this case. In *D'Oench Duhme & Co. v. Federal Deposit Insur. Co.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that "secret agreements" designed to deceive (or having that effect) creditors or federal banking authorities can not be asserted as a defense against the FDIC suing in its corporate capacity to collect on a note. *See North Ark. Medical Ctr. v. Barrett*, 962 F.2d 780 (8th Cir.1992) (doctrine also can be applied by the RTC as a defense to claims asserted against the RTC by third parties); *see also* 12 U.S.C. § 1823(e) (codifying the principles set forth in *D'Oench* ). In the instant case, the RTC argues both the Modification Agreement, and the agreed release of five and three-quarters (5.75) acres upon tender of Brar's down payment, are

secret agreements which this Court should not enforce.

The claim that defendant RTC had no knowledge of the Modification Agreement is difficult to accept, as the Defendant received $135,000.00 from the sale of the 17.9 acres. First Stafford also alleges that the RTC knew of the Modification Agreement and had the ability to review these documents, but chose not to do so. *Cantor Dep.* ar 104–106. Finally, the Modification agreement was recorded in the land records. For all of these reasons, the Modification Agreement is not the "secret agreement" the RTC claims.

The RTC also asserts it had no knowledge of the alleged five and three-quarters (5.75) release set forth in the sales contract and in the January 20, 1988 letter executed prior to settlement of the First Stafford loan. Neither the contract nor the letter were referenced in the deed of trust, nor were they recorded, executed by Heritage, or contained in the bank files of Heritage.

Despite the RTC's claims, Arthur Kern, the responsible loan officer at Heritage, stated in his deposition that Heritage knew Brar was entitled to have five and three-quarters (5.75) acres released in consideration of their down payment. *Kern Dep.* at 11, 12, 14, 64; *Cantor Dep.* at 32–34. Kern had a copy of the Sales Contract which included this provision, and he informed his boss, Anthony Renaldi, of the release provisions in the contract. The Plaintiffs certainly could not have meant to deceive the RTC at the time of execution of the First Stafford sales contract, letter, and deed of trust, because at the time the documents were executed, First Stafford had not even contemplated pledging the promissory notes involved as collateral.

■ The Court believes that the RTC misconstrues the *D'Oench, Duhme* doctrine. Contrary to the agency's representations, this doctrine was developed to prevent bank examiners from being defrauded by secret deals between bank officers and their customers. The doctrine is inapplicable where deeds of trust originate from transactions

---

9. The Court is not persuaded by First Stafford's argument that the Plaintiffs' right to a release is barred by Brar's allegedly unclean hands. The fact that Brar owes First Stafford a substantial amount of money does not automatically make this party ineligible for equitable relief. Even if Brar was so barred, this would not eliminate Ameribanc's equitable right to have the ten (10) acres released from First Stafford's lien.

among private parties which subsequently are assigned to a bank and also does not apply to lien priority disputes. *Falk v. Mt. Whitney Savings & Loan Ass'n,* 5 F.3d 347 (9th Cir.1993); *Bateman v. F.D.I.C.,* 970 F.2d 924 (1st Cir.1992); *Resolution Trust Corp. v. 1601 Partners, Ltd.,* 796 F.Supp. 238 (N.D.Tex.1992).

Accordingly, the *D'Oench, Duhme* doctrine does not bar reformation of the deed of trust in this case.

### V.

For the reasons set forth above, plaintiff Brar's Request for Leave to File Answers to Requests for Admissions is GRANTED. The Court also hereby GRANTS the Plaintiffs' Motion for Partial Summary Judgment and DECLARES that Ameribanc is entitled to a first lien upon ten (10) acres of the subject twenty-two and one-half (22.5) acre parcel. The parties are DIRECTED to reform the First Stafford Deed of Trust so that the partial release provisions are accurate.

Because the Plaintiff Ameribanc's fraud count is rendered moot by this opinion, the only issue raised by Plaintiff Ameribanc which is left for trial is the Plaintiff's Interference with Contractual Relations claim.

And it is SO ORDERED.