Frank **ALEXANDER** et al.,

v.

Frank **RIZZO**, Police Commissioner, Philadelphia, and Morton Solomon, Deputy Commissioner, Joseph O'Neill, Chief Inspector, et al.

Civ. A. No. 70–992.

United States District Court,
E. D. Pennsylvania.

Jan. 27, 1971.

See also D.C., 50 F.R.D. 374.

Peter W. Brown, Community Legal Services, Philadelphia, Pa., for plaintiffs.

Levi Anderson, City Solicitor, John M. McNally, Asst. City Solicitor, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

The present action was brought as a civil rights action under 42 U.S.C.A. § 1983 et seq. and seeks, pursuant to 28 U.S.C.A. § 2201, "to have declared unconstitutional, and to preliminarily and permanently enjoin, the deprivation under color of state law of rights, priv-

ileges, and immunities secured to plaintiffs by the United States Constitution." Complaint p. 3. The gravamen of plaintiffs' complaint is that as a matter of practice the police department, when attempting to solve major felonies, engages in mass investigatory arrests without having either the consent of the individual or probable cause.

Extensive pre-trial discovery has already taken place. Presently outstanding before the Court are two motions by Community Legal Services, counsel for plaintiffs: (1) a motion under Rule 36 of the Federal Rules of Civil Procedure to determine the sufficiency of the defendants' answer to plaintiffs' request for admissions and (2) a motion to compel answers to certain interrogatories propounded by the plaintiffs.

The plaintiffs filed the following request for admission: "The actual practices of the Philadelphia Police Department in the investigations of the death of Officer Cione and the injury of Officer Green, more fully identified in the complaint herein, are typical and reflective of the practices of the Philadelphia Police Department in felony investigations generally, regardless of whether or not the victim is a police officer." The defendants answered this request as follows: "The defendants will not admit the truth of the averment in Request # 1 because they have no knowledge as to whether the practices in the investigation of the death of Officer Cione are reflective of the practices of the Department in all felony investigations."

Plaintiffs contend that defendants' answer does not comply with Rule 36 and therefore the facts set forth in their request should be deemed to have been admitted. Specifically, plaintiffs contend that the answer is defective because Rule 36 explicitly states that lack of information or knowledge may not be given as a reason for failure to admit or deny unless the party states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny. Defendants argued in their brief and oral argument that in order to answer the request they would have to examine all other investigations made by the Department to determine whether the same procedures were used. Rule 36 provides that a party who has filed Requests for Admissions may move to determine the sufficiency of the answer. If the Court determines that the answer does not comply with the Rule it may order *either* that the matter is admitted *or* that an amended answer be served. It appears clear that the defendants' answer to the request does not comply with Rule 36. However, while the defendants' answer does not specifically state that the information necessary to answer the request is not readily available, it is clear that this is their position. See defendants' brief, p. 7. Since the rule provides that the Court may either order the matter admitted *or* order an amended answer, the Court will deny plaintiffs' request to have the averment of the request admitted and order the defendants to file an amended answer to the request.

Plaintiffs' second motion is to compel answers to interrogatories. A short statement of the actions already taken with regard to these interrogatories is helpful in placing this motion in perspective. The interrogatories are eleven in number. The first interrogatory, which is the disputed one, seeks information regarding investigations of fifteen major felonies by the Philadelphia Police Department. This interrogatory[1] asks for, *inter alia*, the name, address and date of each person picked-up in the individual investigations as well as the time and duration, and whether the person was photographed or given a polygraph test at the questioning. The interrogatory also asks whether the person was a suspect, and, if so, the facts

---

I. The interrogatory in its entirety is appended to the opinion.

on which this was based, or whether he consented to the pick-up and the facts in support of this answer. Considering the nature and scope of the incidents inquired about, as well as the scope of the information requested, it is clear that the interrogatory requires a tremendous amount of work and compilation on the part of the Police Department. Initially, the defendants objected generally to these interrogatories. After argument and the submission of briefs the court, in a Memorandum and Order, denied defendants' motion for an order relieving them from answering the interrogatories. Alexander v. Rizzo, 50 F.R.D. 374 (E.D.Pa.1970). Subsequent to this ruling the defendants, alleging certain objections to specific interrogatories again sought to be relieved from answering the interrogatories. After conferences in chambers the Court, *inter alia*, ordered the defendants to answer interrogatory # 1 with respect to the incidents involving Officers Cione and Green.[2] On September 17, 1970, at plaintiffs' request, the parties again met with the Court regarding the answers to the first interrogatory and the thirteen other incidents which were attached in schedule form to the original set of interrogatories. It was agreed at that meeting, and approved by the Court, that defense counsel would check the files of the Department concerning the investigation of the murder of Dr. Milton Katzman to determine the scope of that investigation.[3] As a result of this examination the defendants have produced the names and addresses of 221 persons who were picked-up during this investigation. On November 4, 1970, the plaintiffs filed the instant motion to compel answers to interrogatories in which they seek to have the Court order the defendants to complete the answers to the first interrogatory in the Katzman incident as well as answer this interrogatory with respect to the other incidents scheduled in the interrogatories. The Court has had the benefit of both briefs and oral argument on this motion.

It is defendants' contention that the information requested is not readily available to them and therefore it is both burdensome and expensive to require them to answer. Defendants further state that once the names and addresses of persons who were picked-up during an investigation are supplied to plaintiffs they can ascertain for themselves the other information requested by the interrogatory. Since the plaintiffs seek to have the Court enjoin certain practices of the Philadelphia Police Department, it will be necessary for them to show, if they are to prevail, not merely isolated incidents of police misconduct, but rather that as a matter of practice the Department acts improperly in investigating major felonies. The defendants have refused to admit, or at least contend that they are unable to admit, that the practices utilized in the investigations of the Cione and Green incidents, to which the interrogatory has been completed, reflect the practices of the Department in felony investigations which do not involve officers.[4] They also have continuously objected to answering the first interrogatory which would provide information necessary to go forward with the case or even to make the information available to plaintiffs. The Court has carefully consider-

---

2. The Court did rule that the answer to interrogatory 1(e) should be held in abeyance. This question has now been answered in such a manner as to keep confidential certain police sources.

3. This incident was one of those listed in the original schedule and to which affidavits have been filed alleging certain misconduct on the part of the defendants.

4. In their brief defendants do state "If there is any wrong doing (sic) connected with such arrests and interrogations [re Officers Cione and Green] the plaintiffs have sufficient material to warrant their asking the Court for relief." Defendants brief p. 3.

ed the respective positions of the parties and finds the defendants' position to be untenable. Defendants claim that the interrogatories "serve no legitimate purpose in determining the issues in the instant case." Defendants' brief p. 2. The Court does not agree with this statement but rather finds that it is necessary to go forward with discovery, limited solely to the Katzman incident, in order that plaintiffs will be able to offer evidence at the trial regarding an investigation where the victim was not a police officer. Furthermore, the Court finds that merely supplying the names and addresses of individuals picked-up in the Katzman investigation is not alone sufficient since several of the subdivisions request information which the individual picked-up would have no way of knowing. For example, such information as why the person was picked-up, which is obviously necessary if the plaintiffs are to adequately prepare for trial, is solely within the knowledge and control of the defendants. However, the Court does find that defendants, a public body vested with the increasingly difficult responsibility of providing necessary services for a large and complex urban area, has, to date, been put to considerable time and expense in defending this suit. Therefore the Court will attempt to balance the burden involved in answering this interrogatory with respect to the Katzman incident by ordering the defendants to answer those subdivisions of the interrogatory which plaintiffs could not discover for themselves and ordering plaintiffs to ascertain for themselves certain of the requested information. More specifically, the Court rules as follows on the subdivisions of the first interrogatory: [5] 1A, the date and place of pick-up—the plaintiffs; 1B, the name and address of each person picked-up—the defendants; 1C, the dates and duration of the questioning —the plaintiffs; 1D, the time and place of the termination of the interrogation —the plaintiffs; 1E, was the individual a suspect—the defendants; [6] 1F, was the pick-up based on a warrant—the defendants; 1G, did the person consent to the pick-up—the defendants; 1H, was the person restrained in his liberty— the plaintiffs; 1I, the name of each person charged as a result of the investigation—the defendants; and 1J, the individual policemen involved in the varying aspects of the investigation— the defendants.

It is clear from our opinion that the Court has limited the answering of the interrogatory to the Katzman incident. The Court has limited discovery in this manner in an attempt to ensure that plaintiffs have the information necessary to try their case without overburdening the Police Department. In this regard the Court wishes to state that if the plaintiffs are able to demonstrate that the Police Department acted improperly in a large number of incidents with respect to the Cione, Green, and Katzman investigations, i. e. that any wrongdoing was not merely an isolated incident, the Court will be satisfied that plaintiffs have sustained their burden of proving a practice. Because of this, it will not be necessary to engage in further discovery involving the other incidents appended to the interrogatories.[7]

### APPENDIX
### PLAINTIFFS' INTERROGA-
### TORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, the following interrogatories are to be answered by Defendant Rizzo under oath within 15

5. The description of the subdivision given is only meant to be illustrative. The full scope of the subdivision as originally submitted should be answered.

6. This subdivision, as was the case involving the Green and Cione incidents, may be answered in such a manner as to preserve the confidentiality of police sources.

7. See footnote 4, supra.

days from service thereof on the basis of his personal knowledge or on the basis of facts known to persons subject to his control. Supplementary answers are to be filed according to the requirements of local rule 25(f) of the District Court for the Eastern District of Pennsylvania. All words herein have their meaning in ordinary English usage except that the word "consent" shall have only the meaning given below and the other words defined below shall have the specific meanings given below in addition to their meanings in ordinary English usage.

*Consent*—means only: the voluntary expression by a person of willingness to do something requested by a Philadelphia Police officer after being advised that he may freely choose not to do the thing requested.

*Documents*—writings or recordings of any kind, whether handwritten, typed or printed, including but not limited to: letters, memoranda, bulletins, orders, photographs, microfilms, resolutions, books, computer print-outs, computer cards, papers, pamphlets, notebooks, diaries, notes, recording tapes, discs, wires, training manuals, duty manuals, and forms.

*Identify*—to state each of the following which is applicable: title, author, date and place of publication, name of publisher, name of person to whom published, name of any person reviewing or examining document, date of communication or delivery, present place of custody, name and address of present custodian, method of distribution and routing, and form number.

*Restraint of Liberty*—a situation in which one or more Philadelphia Police officers would not permit a person to leave the presence of the police or a particular place if such person were to express a desire to do so.

*Record*—to quote, report, contain, reflect, symbolize, encode, denote, connote, reveal, summarize the results of, evidence, retain the impression of, depict, schematize, or duplicate.

*Police*—(when used as an adjective) connected with or pertaining to the Philadelphia Police Department.

*Police Officer*—any present or former employee, member, or agent of the Philadelphia Police Department, including Defendants.

*Pick-up*—any action by a police officer which results in the presence of the person picked-up at a police building or in a police vehicle.

1. For each investigation listed in the attached schedule state each of the following:

A. the date, time and place of each pick-up in connection therewith;

B. for each pick-up, the names, ages, and residences of each person picked-up;

C. for each pick-up, the dates, times, places and duration of each questioning, fingerprinting, photographing and polygraphing of each person picked-up;

D. for each pick-up, the date, time and place of the termination of the presence in each police building or vehicle of each person picked-up;

E. for each pick-up, whether or not each person picked-up was suspected at the time of the pick-up of having committed a crime, and, if so, the crime and the facts which served as the basis for suspicion as to each person;

F. for each pick-up, whether or not the pick-up was based upon a warrant for the arrest of each person picked-up, and, if so, the number and date of issuance of each warrant, the name of the issuing judicial officer, the name of the person requesting each warrant and the facts which served as the basis for issuing each warrant;

G. for each pick-up, whether each person picked-up consented to the pick-up, and, if so, the facts which served

as the basis for believing that each person had consented;

H. for each pick-up, whether each person picked-up was restrained of his liberty at any time during his presence in each police vehicle or building, and, if so, the dates, times, places, and duration of such restraint;

I. the name, age, and address of each person charged with crime as a result of the investigation, and the crime with which each such person was charged;

J. for each pick-up, the name, badge, rank, and residence address of each police officer who:

    i. made the decision to have each person picked-up;

    ii. carried out or participated in the pick-up;

    iii. carried out or participated in questioning, fingerprinting, polygraphing or photographing of a person picked-up;

    iv. witnessed all or any part of the presence in a police or vehicle of a person picked-up.