**ASEA, INC., Plaintiff-Appellee,**

v.

**SOUTHERN PACIFIC TRANSPORTA-TION COMPANY, a corporation, and Harbor Belt Line, a partnership, Defendants-Appellants.**

No. 80–5341.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1981.

Decided Dec. 28, 1981.

Rehearing and Rehearing En Banc
Denied March 8, 1982.

Lila L. Cox, Los Angeles, Cal., for defendants-appellants.

Francis J. MacLaughlin, Lillick, McHose & Charles, Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and WALLACE, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

Southern Pacific Transportation Co. and Harbor Belt Line (the railroads) appeal from a judgment entered in favor of Asea, Inc. (Asea) and from the denial of their motion for a new trial. The railroads' principal contention in this appeal is that the district court erred in ordering admitted certain matters the railroads failed to admit or deny in response to requests for admissions served by Asea. We affirm in part and vacate and remand in part.

## I

Asea, a New York corporation, is the sole United States distributor of electrical transformers manufactured in Sweden by Asea A/B, a Swedish corporation.[1] Asea sold a

---

\* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

1. The complaint in this case misdescribed Asea as a Swedish corporation. The railroads now claim they were prejudiced by the "de facto

transformer to the Los Angeles Department of Water & Power. The transformer was transported by merchant vessel from Sweden to the Los Angeles harbor. Pursuant to their contract with Asea, the railroads then took custody of the transformer and shipped it to North Hollywood, California. Upon its arrival, the transformer was inspected by representatives of the railroads and Asea. It was found that the transformer had shifted on the railroad car during transit despite being shored and braced. An electrical check revealed the transformer had shorted. Asea had installed an "impact recorder" on the transformer to measure any impact that might occur during rail carriage. Inspection of the impact recorder tape indicated that, while the transformer was in the custody of the railroads, it had suffered an impact measured at 1.8 on the recorder scale, equivalent to an impact at a speed in excess of 5 miles per hour. Internal inspection of the transformer revealed that it had sustained substantial damage during transit.

On July 10, 1978, Asea filed an action for damages in the district court, invoking its diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), relying on theories of negligence, breach of implied warranty, and violation of California Civil Code § 2194 (inland carrier's liability for loss). The parties engaged in extensive discovery for over one year. On January 22, 1979, Asea served a series of requests for admissions pursuant to Fed.R.

Civ.P. 36(a).[2] Those of primary importance in this appeal related essentially to the condition of the transformer at the time the railroads took custody of it, the impact revealed on the impact recorder tape, the location of the transformer at the time the impact occurred, the short discovered in the transformer after its arrival and the reasonable cost of repairing the transformer and returning it to the Los Angeles Department of Water & Power. The district court allowed additional time to reply. To eighteen of these requests, the railroads responded on May 24, 1979:

Answering party cannot admit or deny. Said party has made reasonable inquiry. Information known or readily obtainable to this date is not complete. Investigation continues.

Each of the requests for admissions was accompanied by an interrogatory which asked that if the railroads' response was anything other than an unqualified admission, they should state the facts, documents and witnesses upon which the response was based. The railroads answered these interrogatories by insisting they were "[n]ot applicable."

Discovery continued following a pretrial conference held in June, 1979. As a result of further depositions of certain railroad employees, Asea became convinced that the railroads had known the actual cause of the impact on the transformer for many months, and therefore could have admitted

---

substitution of a party plaintiff." We find no merit in this argument and reject it. *See* Fed. R.Civ.P. 15(b).

**2.** Fed.R.Civ.P. 36(a) provides in part:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. . . .

. . . .

The matter is deemed admitted unless, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . The answer shall specifi-

cally deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. . . . *An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny*

. . . .

. . . .

The party who has requested the admissions may move to determine the sufficiency of the answers or objections. . . . *If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. . . .* (emphasis added).

or denied the requests for admissions. On December 3, 1979, five weeks prior to trial, Asea moved to have the requests ordered admitted. At the hearing on the motion, the railroads claimed that their responses were proper by authority of Rule 36(a) because they did not have any firsthand information. The district court inquired whether the railroads had "subsequently come into more information that [would] enable [them] to supply more appropriate answers?" Counsel for the railroads responded, "We may possibly, Your Honor," but insisted that "the answers still stand." The railroads claimed the information relevant to the requests for admissions was "wholly within the hands of [Asea]." The court replied:

> [T]hat's what I hear all the time . . . . [T]his case has been here so many times, and you are a constant complainer about the inadequacy of the other side. Now it appears that you're standing behind that same shield yourself saying that you just don't have the information to provide.

The district court took the matter under submission and subsequently granted Asea's motion to order the matters admitted. The railroads' later motion to have these admissions withdrawn was denied.

## II

■ The railroads contend their responses to the requests for admissions satisfied the requirements of Fed.R.Civ.P. 36(a). In the alternative, they argue that the sanction for failure of a party to make reasonable inquiry prior to answering a request for admission lies in an award of the expenses incurred in proving the fact at trial, pursuant to Fed.R.Civ.P. 37(c), and not in deeming the matter admitted. We have considered this issue carefully because it apparently is a question of first impression. We conclude, however, that a district court may, under proper circumstances and in its discretion, order admitted matters which an answering party has failed to admit or deny, where the information known or readily obtainable after reasonable inquiry was sufficient to enable the answering party to admit or deny.

■ The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. *Keen v. Detroit Diesel Allison*, 569 F.2d 547, 554 (10th Cir. 1978); *Webb v. Westinghouse Electric Corp.*, 81 F.R.D. 431, 436 (E.D.Pa.1978). The Rule was amended in 1970 to adopt the majority view that a party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2261, at 731 (1970). As the Advisory Committee's Note explains, the Rule is "in keeping with a basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process." *Advisory Committee's Note to Rule 36(a)*, 48 F.R.D. 531, 533 (1970). The appropriate penalty for a party's failure to discharge that burden, however, is unclear.

■ Rule 36(a) provides that a matter may be deemed admitted if the answer "does not comply with the requirements of this rule." It is undisputed that failure to answer or object to a proper request for admission is itself an admission: the Rule itself so states. It is also clear that an evasive denial, one that does not "specifically deny the matter," or a response that does not set forth "in detail" the reasons why the answering party cannot truthfully admit or deny the matter, may be deemed an admission. *See, e. g., Havenfield Corp. v. H & R Block, Inc.*, 67 F.R.D. 93, 96–97 (W.D. Mo.1973). Since such a response does not comply with the literal requirements of Rule 36(a), the district court may, in its discretion, deem the matter admitted. The railroads, however, argue that an answer complies with the requirements of Rule 36(a) if it states that the party has insufficient information to admit or deny the matter and that the party has made reasonable inquiry into all readily obtainable information.

The language of Rule 36(a) would indeed permit such a construction. The Rule provides that a party may not give lack of information as a reason for failure to admit or deny "*unless he states* that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny" (emphasis added). The railroads cite in support of this construction *Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107*, 349 F.Supp. 436 (E.D.Pa.1972), where the district court observed that "it would appear that a mere statement in the answer that the answering party has made reasonable inquiry and that the information solicited was insufficient to enable him to admit or deny the requested matter will suffice." *Id.* at 451–52 (footnote omitted). Their position is further supported by the Advisory Committee's Note, which states:

> The revised rule requires only that the answering party make reasonable inquiry and secure such knowledge and information as are readily obtainable by him. In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal. Even when it is not, the information may be close enough at hand to be "readily obtainable." *Rule 36 requires only that the party state that he has taken these steps. The sanction for failure of a party to inform himself before he answers lies in the award of costs after trial, as provided in Rule 37(c).*

48 F.R.D. at 533 (emphasis added).

We have not been cited to, nor has our review uncovered, any case holding that a response which includes the statement required by Rule 36(a) may nonetheless be deemed an admission. Even when a party's answer does not include such a statement, and thus fails to comply with the literal requirements of the Rule, courts generally order an amended answer rather than deem the matter admitted. *See, e. g., City of Rome v. United States*, 450 F.Supp. 378, 383–84 (D.D.C.1978), *aff'd*, 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); *Alexander v. Rizzo*, 52 F.R.D. 235, 236 (E.D.Pa. 1971). Some courts have held that a response is insufficient if the answering party

has in fact failed to make "reasonable inquiry" and if the information necessary to admit or deny was "readily obtainable." Nonetheless, these courts have generally granted motions to compel a response to the request, *see, e. g., Madison v. Mississippi Medicaid Comm'n*, 86 F.R.D. 178, 186 (N.D. Miss.1980); *Webb v. Westinghouse Electric Corp., supra*, or have ordered the answering party to make reasonable inquiry, *see, e. g., Lumpkin v. Meskill*, 64 F.R.D. 673, 678–80 (D.Conn.1974). These courts have conditioned their denial of motions to order the matters admitted on the answering party's timely submission of a sufficient response. *See also Havenfield Corp. v. H & R Block, Inc., supra.*

We are not persuaded that an answer to a request for admission necessarily complies with Rule 36(a) merely because it includes a statement that the party has made reasonable inquiry and that the information necessary to admit or deny the matter is not readily obtainable by him. The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned. *See Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). The abuses of the current discovery rules are well documented. In our view, permitting a party to avoid admitting or denying a proper request for admission simply by tracking the language of Rule 36(a) would encourage additional abuse of the discovery process. Instead of making an evasive or meritless denial, which clearly would result in the matter being deemed admitted, a party could comply with the Rule merely by having his attorney submit the language of the Rule in response to the request. Since a district court may order that a matter is admitted only if an answer does not "comply" with the requirements of the Rule, it could be argued that the only sanction for a party's willful disregard of its obligation to make reasonable inquiry would be an award of the expenses of proving the matter at trial pursuant to Rule 37(c). Without disparaging the deterrent effect of such a sanction, we believe that restricting the dis-

trict court's discretion in this manner would reduce a litigant's obligation to make "reasonable inquiry" into a mere semantic exercise, and thus severely undermine the policy embodied in Rule 36(a) of limiting the issues before trial.

We hold, therefore, that a response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made "reasonable inquiry," or if information "readily obtainable" is sufficient to enable him to admit or deny the matter. A party requesting an admission may, if he feels these requirements have not been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted. Although the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed, this determination, like most involved in the oversight of discovery, is left to the sound discretion of the district judge. *See David v. Hooker, Ltd.*, 560 F.2d 412, 418–19 (9th Cir. 1977); *French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1969). The general power of the district court to control the discovery process allows for the severe sanction of ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a).

Here, the district judge decided not to require an amended response. Although counsel for the railroads asserted that they would stand pat on the prior responses, she did state that additional answers would be filed if the court required it. But this was not the first discovery problem presented to the court. Far from it. A year of volatile and acrimonious fighting, during which many discovery disputes were placed before the judge as referee, had preceded it. Thus, we cannot say the district judge abused his wide discretion in not requiring

amended responses. Indeed, his efforts to untangle the complicated charges and counter-charges are well demonstrated by his order requiring the railroads to file amendments to their interrogatory answers, which was entered simultaneously with his order deeming the requests admitted.[3]

The more difficult question is whether that discretion was abused when he imposed the severe sanction of deeming admitted certain key matters described in the requests. This is answered by determining whether the district judge properly found that the railroads did not make reasonable inquiry or that the information readily obtainable was sufficient to allow them to admit or deny the particular requests. The order of the district judge, however, does not state the basis upon which he concluded that the matters should be ordered admitted. There is evidence in the record suggesting that the railroads in fact had sufficient information to admit or deny the requested admissions at the time they submitted their answers to Asea, or that they subsequently discovered sufficient information to require them to amend their answers. *See* Fed.R.Civ.P. 26(e)(2)(B). It is less clear whether a finding could be made that the railroads failed to make reasonable inquiry. With a sanction as severe as the one imposed, we conclude that a finding by the district court is necessary for proper appellate review. We therefore vacate the judgment and remand for the limited purpose of reconsideration of the order deeming the requests admitted and the filing of appropriate findings of fact. What that reconsideration entails shall be determined by the district court, but we do not exclude an evidentiary hearing if one is determined to be necessary.

The railroads also argue that the district court erred in denying their motion to have the admissions withdrawn. *See* Fed.R. Civ.P. 36(b). They insist the district court was required to withdraw their admissions

---

**3.** Asea also moved to strike the railroads' answer and for a default judgment, on grounds nearly identical to those offered in support of its motion to have the matters not denied in response to its requests for admissions ordered admitted. The district court refused to impose this sanction, indicating that such "drastic action" was not justified.

because they amounted almost to an admission of liability and because Asea made no affirmative showing of prejudice. *See Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192 (D.Conn.1976). We disagree. The record refutes the railroads' contention that, in light of the deemed admissions, the trial was a "sham." On the contrary, during the course of this two-week trial the railroads were permitted extensive cross-examination on such important issues as the impact recorder tape and the several inspections of the transformer. Furthermore, courts have held that a request for admission, and thus an admission itself, is not improper merely because it relates to an "ultimate fact," *City of Rome v. United States, supra*, 450 F.Supp. at 383, or to an issue of fact that is dispositive of the merits of a case, *In re Mack*, 330 F.Supp. 737, 738 (S.D.Tex.1970). Whether we would follow such a rule is not before us. The railroads could have adequately protected their interests by objecting to the requests for admissions or, subject to Rule 37(c), by denying them.

 What the railroads are actually asserting is that they had an absolute right under Rule 36(b) to have the admissions withdrawn. Such a reading seems especially inappropriate when the Rule uses the discretionary term "the court may." A *per se* rule that the district court must permit withdrawal of an admission which relates to an important or dispositive matter is inappropriate in light of the purpose of this discovery device: to narrow the issues for trial and avoid litigation of unessential facts. In a proper case, of course, such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal. But our review is limited to whether the district judge abused his discretion. On the record before us, we conclude he has not.

4. The railroads also claim the district judge erred when he denied their motion to dismiss for failure to comply with two of the court's discovery orders. *See* Fed.R.Civ.P. 37(b)(2)(C). Since the district court did not find that Asea's

## III

 The railroads raise several other claims of error. First, they contend it was improper for the district court to order the deposition of a non-party witness to be taken in Sweden, the deponent's domicile. A district judge has discretion to direct the place of a deposition. Fed.R.Civ.P. 45(d)(2). It was not an abuse of discretion for the district judge to protect this witness from the burden of traveling overseas for examination.

 Second, the railroads argue that the court erred in refusing to order Asea to supplement its answers to some of the railroads' interrogatories regarding the design of the transformer and its cost of construction. Asea claims the information on the transformer's design was a trade secret, *see* Fed.R.Civ.P. 26(c), and that the information on cost of construction (as opposed to cost of repair) was irrelevant. After a careful review of the record, we conclude that the district judge did not abuse his discretion in refusing to order the additional answers. The district judge granted motions to compel additional answers to some of the interrogatories, denied others, and sustained some of Asea's objections. In a case such as this, involving protracted and acrimonious discovery, we will not substitute our judgment for that of the district judge.[4] *See Campbell Industries v. M/V Gemini, supra*, 619 F.2d at 27.

Finally, the railroads assert numerous claims of error in the jury instructions given by the district court, the court's refusal to give two requested instructions, the admission of testimony of two of Asea's witnesses and the sufficiency of the evidence as to damages. These contentions are without merit, and we reject them.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

failure to comply was in bad faith or in "flagrant disregard" of its orders, *G–K Properties v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir. 1978), the sanction of dismissal was not required in this case.