## Massachusetts Highway Department *vs.* Hallam J. Smith & another,[1] trustees.[2]

No. 99-P-0001.

Suffolk. December 4, 2000. - May 21, 2001.

Present: PORADA, LAURENCE, & LENK, JJ.

*Practice, Civil,* Admissions, Summary judgment. *Rules of Civil Procedure. Indemnity. Contract,* Indemnity. *Hazardous Materials.*

This court concluded that a party who, in response to requests for admissions made pursuant to Mass.R.Civ.P. 36(a), answers by tracking the language of the rule that it has made reasonable inquiry and the information known or readily available is insufficient to admit or deny, runs the risk of having a judge give conclusive effect to that response, but only after a showing has been made that the responding party failed to exercise due diligence in obtaining the information or had enough information to be able to respond accurately and, thus, intentionally disregarded its good faith discovery obligations [617-619]; accordingly, in an action for breach of contract, in the absence of such a showing, the judge's treatment of the plaintiff's responses as conclusive was unwarranted, and his grant of summary judgment in favor of the defendant, based in large part on the effect of treating those responses as conclusive, could not stand, where the countervailing evidence filed by the plaintiff was sufficient to create material issues of fact [619-621].

CIVIL ACTION commenced in the Superior Court Department on December 31, 1996.

The case was heard by *Nonnie S. Burnes,* J., on motions for summary judgment.

*James A. Sweeney,* Assistant Attorney General, for the plaintiff.

*Alan R. Hoffman* for the defendants.

PORADA, J. In conjunction with a taking by the Massachusetts Highway Department (MHD) of property belonging to the

---

[1]Richard S. Ciummei.

[2]Of the 121 Prescott Street Trust.

defendant (trust) for the construction of the Central Artery/ Tunnel project in East Boston, the parties entered into an agreement containing an indemnification clause. Under the agreement, the trust[3] was to indemnify MHD for all costs and liability "arising by reason of" the release of oil; the bringing of oil; or the use, generation, or disposal of oil on the property during the trust's ownership of the property. When the trust refused to indemnify MHD for certain costs and liability incurred to clean up contamination from fuel oil, MHD filed this action in the Superior Court against the trust for breach of the indemnification agreement.

The trust filed a motion for summary judgment, and MHD filed a motion for partial summary judgment on liability. A Superior Court judge allowed the trust's motion on the ground that the trust had demonstrated that MHD would be unable to prove that the contamination of the soil was connected to a release or use of oil during the trust's ownership of the property and, thus, was not entitled to indemnification under the agreement. On appeal, MHD argues that the judge should have allowed its motion for partial summary judgment on liability and denied the trust's motion or, alternatively, should have denied both motions because of the presence of material issues of fact relating to whether MHD met the conditions for indemnity under the terms of the agreement. We reverse the judgment that was entered for the trust, but we decline to reverse the judge's denial of MHD's motion for partial summary judgment.

We summarize those facts which are not in dispute. The trust acquired the property in November, 1958, and owned it until MHD took the property by eminent domain on June 30, 1993. The property contains almost eight acres of land surrounded by the Logan International Airport on three sides and the Mc-Clellan Highway (Route 1) on the fourth side. When the trust acquired the property in 1958, there were five buildings on the property. A sixth building was added in 1972. Also, when the trust acquired the property, there were three 10,000 gallon underground tanks used for the storage of fuel oil on the

---

[3]The trust includes the defendant and its predecessor, R.S.R. Realty Company, Inc.

property. From 1959 to 1972, until the sixth building was built, those tanks were used to store and supply fuel oil to a central boiler located in one of the five buildings. The boiler was connected to the four other buildings on the premises by a system of steam tunnels and pipes and was the source of heat for the five buildings.

Although the use of the tanks was discontinued in 1972, they remained in place until they were removed by the trust under the terms of the parties' settlement agreement. The trust hired an environmental consultant to remove the tanks and to remediate any contamination of the soil resulting therefrom. The tanks were removed in October, 1993. The consultant found that the tanks were corroded and had been leaking for some time. One tank had many holes, the majority of which were greater than one inch in diameter and were located below the water table. This tank disintegrated upon removal. Another tank was severely corroded with leaks in the seams below the groundwater level. The third tank also had several small holes in it. The piping associated with the tanks was also found to be corroded and had many holes in it. The consultant also found that the soil and groundwater in the area of the tanks were contaminated with fuel oil. The consultant did remove 200 cubic yards of contaminated soil in the area of the tanks but was not authorized to remove more than this quantity.

MHD had an agreement with the Massachusetts Department of Environmental Protection (DEP) which obligated MHD to remediate any residual contamination on this property after the construction of the Central Artery/Tunnel project. The remediation was to be performed pursuant to the regulations promulgated by the DEP under the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, G. L. c. 21E, and the accompanying regulations. To comply with its obligations under this agreement, MHD hired the engineering firm of Camp, Dresser & McKee, Inc. (CDM), to perform sampling of soil and groundwater on the property for the presence of oil or hazardous materials. CDM identified three areas where the soil was contaminated with fuel oil which exceeded the permissible levels under the regulations. The area in which the fuel tanks had been located was one, and the other two areas were located

approximately forty yards south of the fuel tank area. CDM estimates that approximately 5,240 cubic yards of oil-contaminated soil will have to be removed from those areas to achieve appropriate clean up standards. As a result of those tests and proposed estimates by CDM, MDH requested the trust to reimburse it for the costs incurred for the tests and reports made by CDM and the expected cost of clean up of the site. When the trust refused to pay those costs, MDH brought this action in the Superior Court.

In concluding that MHD could not prove when the contamination occurred and, thus, could not prove a causal connection between any of the conditions that would trigger indemnification under the agreement, the judge gave conclusive effect to MHD's responses to the trust's requests to admit that MHD is unable to determine when the contamination in the three identified areas occurred. In response to those requests for admission, MHD had answered that it had "made reasonable inquiry and the information known or readily obtainable is insufficient to enable [it] to admit or deny." The judge treated these responses as binding admissions by MHD that it could not prove when the contamination occurred. We conclude that the judge should not have treated those answers as binding admissions.

Rule 36(a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 795 (1974), provides in pertinent part as follows:

> "Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission either (1) a written statement signed by the party under the penalties of perjury specifically (i) denying the matter or (ii) setting forth in detail why the answering party cannot truthfully admit or deny the matter; or (2) a written objection addressed to the matter, signed by the party or his attorney . . . . An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless he states that he has made reasonable inquiry and that the information known or readily obtainable by him is insufficient to enable him to admit or deny."

Here, MHD's responses tracked the language of the rule that MHD had made reasonable inquiry and that the information known or readily obtainable was insufficient to enable it to admit or deny.

Because our rule is patterned after Rule 36 of the Federal Rules of Civil Procedure and no Massachusetts appellate decision has yet determined whether tracking the rule's language at issue will suffice to preclude a court from treating a response as an admission, we turn to Federal law. When this specific language was inserted in the rule, the Advisory Committee suggested that a response to a request for admission which tracks the language of the rule is a permissible response under the rule and that, if there is any question whether the response is defective, the requesting party should file a motion to test the sufficiency of the response. Advisory Committee Note to Rule 36(a), 48 F.R.D. 531, 533 (1970). The note suggests that the reason for this requirement is the elimination of a party's undue surprise at trial when confronted with the contention that he has made a binding admission when that party had purported to deny or had been unable to admit or deny. *Id.* at 534.

Notwithstanding the Advisory Committee's suggestion as set forth in the note, Federal courts have generally held that the mere tracking of this language may constitute a binding admission if the answering party has not, in fact, made "reasonable inquiry" or if information "readily obtainable" is sufficient to enable him to admit or deny the matter. *Asea, Inc.* v. *Southern Pac. Transp. Co.*, 669 F.2d 1242, 1246-1247 (9th Cir. 1981). *Harris* v. *Oil Reclaiming Co.*, 190 F.R.D. 674, 679 (1999). If it is shown that the answering party has not met one or both of these requirements, then it has been held that it is within the sound discretion of the judge to rule the matter admitted or to order an amended answer to be filed. *Asea, Inc.* v. *Southern Pac. Transp. Co.*, 669 F.2d at 1247. However, the imposition of the severe sanction of a binding admission will be imposed only when the answering party has "intentionally disregarded the obligations imposed by Rule 36(a)." *Ibid.* See *Han* v. *Food and Nutrition Serv. of the United States Dept. of Agric.*, 580 F. Supp. 1564, 1566 (D.N.J. 1984). "A party requesting an admission may, if he feels [the] requirements [of rule 36(a)] have not

been met, move to determine the sufficiency of the answer, to compel a proper response, or to have the matter ordered admitted." *Asea, Inc.* v. *Southern Pac. Transp. Co.*, 669 F.2d at 1247. Cf. *Caron* v. *General Motors Corp.*, 37 Mass. App. Ct. 744, 748 (1994).

We therefore conclude that a party who simply answers that he has made reasonable inquiry and the information known or readily available is insufficient to admit or deny, runs the risk of having a judge give conclusive effect[4] to that response, but only after a showing has been made that the party responding to the requests for admission has failed to exercise due diligence in obtaining the information or that the party responding to the requests for admission had enough information to be able to respond accurately and, thus, intentionally disregarded his good faith discovery obligations. In this case, absent such a showing by the trust, the judge's treatment of MHD's responses as conclusive that it lacked the necessary proof that the contamination occurred during its ownership was unwarranted and too severe a sanction. Cf. *Reynolds Aluminum Bldg. Prod. Co.* v. *Leonard*, 395 Mass. 255, 262 (1985) (in considering whether a judge may ameliorate the binding effect of an admission under Dist. Mun. Cts. R. Civ. P. 36 (1975), a judge may consider "whether relief will advance presentation of the case on the merits and otherwise promote effective justice"). Further, the indemnification agreement did not require that MHD identify a specific date on which a release, bringing onto the property, or use, generation or disposal of oil resulting in the contamination occurred. All that was required under the agreement was that

---

[4]We also note that, while such a response may not necessarily result in a judge giving conclusive effect to that response, it may well result in an order for an amended or supplemental answer. Good faith discovery obligates an answering party to set forth in detail why he cannot admit or deny. Mass.R. Civ.P. 36 (a)(1)(ii). Accordingly, it has been stated that "[i]f the inability results from the respondent's lack of knowledge, the required statement must show (1) that respondent has attempted a reasonable inquiry in an effort to elicit the facts, *and* (2) the insufficiency of whatever information is known to respondent or readily available to him. These requirements are substantial, and aim to preclude promiscuous, frivolous reliance upon the scantiness of respondent's information. They prohibit equating simple lack of investigative energy with honest lack of knowledge." (Emphasis original.) Smith & Zobel, Rules Practice, § 36.6 at 400 (1975).

MHD prove that it is more likely than not that the oil contamination on the property resulted from one or more of those activities during the trust's ownership of the property.[5]

Without the effect of treating those responses as binding admissions on MHD, the countervailing materials filed by MHD were sufficient to create material issues of fact warranting denial of the summary judgment motions. In opposition to the trust's motion, MHD filed the response action outcome report prepared by CDM in which CDM stated that the three 10,000 gallon underground storage tanks had been leaking for some time and that "[t]he released petroleum product consisted of #6 and #4 fuel oil." (This was the type of fuel oil used by the trust to heat its five buildings). MHD also filed the field notes of the firm hired by the trust to remove the tanks which contained notes that the tanks and pipes leading to them were corroded, two of the tanks had holes in them and the other had leaks in its seams, the tanks contained residue of water and oil slick, and oil was observed in the ground surrounding the tanks. In addition, MHD filed an affidavit of an environmental consultant, Bruce Conklin, who averred that the three 10,000 gallon tanks were the source of soil and groundwater contamination in the tank removal area and that the utility conduits from the three tanks could have served as a pathway for oil to migrate from the tank removal area to the other two areas in which oil contamination had been found. He also stated that oil contamination in soil and groundwater in the two areas south of the tank removal area could have resulted from migration of oil in groundwater from the tank removal area. Although these materials do not establish conclusively that the contamination occurred during the trust's

[5]MHD also argues that the judge erred in concluding that MHD must prove a causal connection between the "contamination" and the release, bringing onto the property, or use, generation or disposal of oil on the property during the trust's ownership of the property. MHD argues that there is nothing in the agreement which makes the trust's obligation of indemnification dependent on proof of contamination by the release or use of oil. The judge recognized that the causation standard employed under G. L. c. 21E, while analogous, was not controlling because of the parties' agreement. Nevertheless, we agree that the judge was correct in construing "arising by reason of" to mean that MHD has to prove that there was a causal connection between the release, bringing onto the property, or use, generation or disposal of oil during the trust's ownership of the property and the contamination found in the soil and groundwater.

thirty-three year ownership of the property,[6] when viewed in the light most favorable to MHD, *White* v. *Boston*, 428 Mass. 250, 251-252 (1998), they are sufficient to raise material issues of fact precluding the allowance of summary judgment.

The trust argues that it was entitled to summary judgment on another ground, namely that it had fulfilled all of its obligations under the agreement. According to the trust, its obligation to reimburse MHD for costs and liability to clean up the property was to be measured by MHD's contemplated use of the property as a paved parking lot at the time of the execution of the agreement and it has done that by remediating the property in the tank removal area to the satisfaction of the DEP. MHD argues, on the other hand, that the trust is obligated to reimburse it for costs and liability incurred in remediating the property for any reasonable future use of the property. Because of the result she reached, the motion judge found it unnecessary to address this issue. Although we may affirm a motion for summary judgment on grounds other than those given by the motion judge, *Vaughan* v. *Eastern Edison Co.*, 48 Mass. App. Ct. 225, 226 (1999), we are of the opinion that there is a genuine dispute whether the clean up standard is based on reasonably foreseeable future uses or only presently planned uses for the property. Where the standard is not set forth in the parties' agreement, this will require resolution of factual circumstances surrounding the transaction which should be addressed in the trial court, *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753 (1973), and, thus, we do not reach this issue. In any event, it would appear that there is a genuine issue of fact as to whether the trust bears any responsibility for costs and liability for MHD's remediation of the two areas in question lying south of the tank removal area in which the trust did no clean up work.

In sum, the judgment is reversed, and the action is remanded to the Superior Court for further proceedings.

*So ordered.*

---

[6]As a consequence, MHD's motion for partial summary judgment was appropriately denied.