Cosgrove, Robert C., J.
This is a medical malpractice and wrongful death action. The allegations in the Complaint pertain to the care and treatment of the late Donald C. Morse, Jr., at Brockton Hospital on or about September 8, 2011 through September 10, 2011. On or about December 16, 2014, the plaintiff Donna M. Morse (henceforth, “Morse” or “the plaintiff’) served 107 Requests for Admissions on the defendant Sujung Park, M.D. On or about December 22, 2014, the plaintiff served 98 Requests for Admissions on the defendant Meher Ahmed, M.D. Both defendants responded; in each case, the plaintiff believed the responses to be inadequate. Thereafter, the plaintiff brought the present motions before the court pursuant to Rules 36(a) and 37(c), and the court heard argument thereon on June 24, 2015.
Lack of Compliance with Superior Court .Rule 30A
Preliminarily, Dr. Park argues that the plaintiff has failed to fully comply with Superior Court Rule 30A, in that the plaintiff has filed a single document intended to serve as a combined motion and memorandum in support thereof, and in that the plaintiff s brief has failed to set forth separately for each request, the text of the request, the opponent’s response, and an argument.[2] Dr. Park suggests that in light of this alleged failure, this court’s proper response is to “deny plaintiffs motion and deem the responses sufficient.”
Superior Court Rule 30A, like many other rules of the Superior Court, is designed to assist the judge in quickly and efficiently grasping the issues before him so that he may render a prompt opinion. There is much to be said for rigorous enforcement of the rules: every time they are not enforced, a subtle incentive is created to ignore them in the future, thereby ultimately degrading the efficiency of this court and hampering the administration of justice. On the other hand, rules designed to promote efficiency should not themselves be used as sand to be thrown in the machinery of justice. For better or worse, the motion with respect to Dr. Park was first marked by the clerk’s office for argument on May 6, 2015 back on April 13, 2015. As previously noted, this judge ultimately heard argument by the parties on June 24, 2015. Typically, when a motion is denied for some technical misstep, for example, failure to properly serve a party under Superior Court Rule 9A, that denial is without prejudice to refiling in conformity with the applicable rule, not, as Dr. Park suggests here, a ruling on the merits for the opposing party. At this point, to deny the plaintiffs motions without prejudice to refiling in conformity with Superior Court Rule 30A would indulge a fetish for technical compliance while largely thwarting the very ends the Rule is intended to serve. Accordingly, this court will proceed to the merits and decide the motions before it.
Rule 36
Pursuant to Mass.R.Civ.P. 36(a), any party may serve upon another a written request for admission “for purposes of the pending action, only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.” The other party must then respond by admitting, denying, or “setting forth in detail why the answering party cannot truthfully admit or deny the matter,” or by making a written objection addressed to the matter. The Rule further provides that “(i]f objection is made, the reasons, therefor shall be stated,” and that a “denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify his answer or deny *692 only a part of the matter of which an admission is requested, he shall specify so much of it as is true and qualify or denied the remainder.”
Requests as to the Content of the Medical Record
Many of the plaintiffs requests asked the recipient to admit that something is stated in the medical record. For example, as to Dr. Ahmed, plaintiffs request number 6 states that, “on Thursday, September 8, 2011 at 5:10 RM. the Brockton Hospital Emergency Department record noted that your patient, Donald C. Morse, Jr., stated, ‘I'm feeling really dizzy. I can’t hear out of my right ear, I feel like I’m drunk.’ ” Number 5 of requests to Dr. Park is identical to the request to Dr. Ahmed quoted just above.
To that request, as well as to Requests for Admissions numbers 7, 8, 9, 10, 11, 12, 17, 18, 19, 20, 21, 41, 43, 58, 59, 61, 63, 65, and 74, Dr. Ahmed responded, “[a]dmit that the above statement is an excerpt found in the patient’s medical record at Brockton Hospital.” The plaintiff characterizes this answer as a “stock response,” neither admitting nor denying the request, and accordingly, the plaintiff asks that this court deem those requests admitted by Dr. Ahmed.
The questions at issue merely ask whether something appears in the patient’s medical record. On their own terms, they do not inquire into the accuracy of what appears therein. Whether something is stated in a medical record is a question of fact, and thus properly the subject of a request for admission under Rule 36. Dr. Ahmed’s response is to admit that the statements) at issue indeed appear in the medical record. In the court’s view, her additional characterization of the statement as “an excerpt” is surplusage, but sufficiently pithy and relevant to fall within the spirit of Rule 36’s permission to “specify so much of it as is true and qualify . . . the remainder,” the remainder in this case being any implication that the isolated statement the doctor is asked to admit constitutes the entire record.[3] Accordingly, the court deems Dr. Ahmed’s responses to 7, 8, 9, 10, 11, 12, 17, 18, 19, 20, 21, 41, 43, 58, 59, 61, 63, 65, and 74 as compliant with Rule 36.
To the comparable requests, Dr. Park typically responded, “The plaintiff is in possession of the Brockton Hospital medical record for Donald C. Morse, Jr. which speaks for itself. The defendant DENIES that Donald C. Morse was her patient on September 8, 2011.” As to those questions seeking admissions as to what is stated in the medical record after the point Dr. Park considers that Mr. Morse became her patient, the second sentence is omitted.
Dr. Park first argues that as to the majorify of the requests, she was not involved with the care and treatment of the plaintiff at the pertinent times and thus, “cannot be compelled to admit facts relating to events for which she was not present.” But to the extent that the remainder of the requests “relate to times when Dr. Park was .involved with the patient,” she argues that she should not be expected to go through what she characterizes as the “undue burden” of “going through the medical record to admit or deny each 39 of the requested statements.” After all, the plaintiff can always admit the Brockton Hospital medical record as evidence pursuant to G.L.c. 233, §76G.
A layperson might be forgiven for thinking that doctors almost without exception make diagnoses and implement treatment at least partly on the basis of things that happened to the patient before he ever entered the doctor’s presence. But casting such preconceived notions aside, this court has combed Rule 36 in vain for language exempting doctors who are parties to cases from having to make any factual admission unless it arises from something that occurred in their presence after the doctor-patient relationship had been established. Not surprisingly, it has not found such an exception, and neither has Dr. Park seen fit to call to this court’s attention any case which supports this premise.
As for Dr. Park’s other argument, the court is not persuaded that it is “unduly burdensome” to look at a medical record and decide whether something is or is not contained within it. Rule 36 requires that a party make “reasonable inquiry” to educate herself. As one commentator has observed, “(this is a] substantial requirement! ], intended to preclude promiscuous, frivolous reliance on the scantiness of respondent’s information. They prohibit equating simple investigative lethargy with honest lack of knowledge.” Smith and Zobel, Rules Practice (2d. ed., 2006 & 2015), §36.6, pp. 520-21, citing Massachusetts Highway Dept. v. Smith, 51 Mass.App.Ct. 614, 619 (2001), quoting earlier edition of Treatise. Moreover, it is perverse to argue that Dr. Park ought to be excused from having to make an admission because the plaintiff has alternative means of proof, i.e., introducing the medical record. As all parties acknowledge, the fundamental purpose of the rule is to narrow the scope of issues in dispute for trial. The available sanctions under the rules have the effect of encouraging parties to request admissions to that which they believe they could otherwise prove, and indeed, Rule 36 has been criticized as encouraging the responding party “to deny requests, despite knowing their truth, if, at the time of the response a plausible basis for evidentiaiy hope exists” that the other party will not be able to prove the fact at issue. See Smith and Zobel, Rules Practice, §36.10, p. 526. It follows that Dr. Park’s responses are insufficient under the Rule, and she is hereby ordered to serve an amended answer to requests 4, 5, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 23, 25, 29, 30, 37, 41, 43, 44, 45, 47, 49, 51, 53, 56, 62, 63, 67, 72, 77, 78, 79, 81, 82, 99, and 100 within 20 days of the date of this opinion.[4] She *693 is, of course, entirely within her rights todenythatMr. Morsewas her patient on particular days, to the extent that any request asserts that he was and she disagrees.
Requests Involving Medical Facts and Opinions
There is a second group of requests for which the plaintiff also contends that the two doctors provided inadequate responses under the Rule.[5] Generally speaking, these requests set forth a medical proposition, or a factual statement about the state of a defendant’s medical knowledge or procedure at a particular time. The first three requests to Dr. Ahmed will give something of the flavor:
Request no. 15: “Bradycardia is a finding which is consistent with ischemic stroke.”
Request no. 16: “On September 9, 2011 you, Meher A. Ahmed, M.D. knew that raised blood pressure with bradycardia is an indicator of increased in-tracranial pressure.”
Request no. 22: “On September 9, 2011 you, Meher A. Ahmed, M.D. knew that ambulation, in other words walking is a key component of the cerebellar function evaluation.”
To these requests, and to the others in the group, Dr. Ahmed responded, “objection. This request is objected to on the grounds that it is vague, ambiguous and subject to multiple interpretations, depending upon additional factors not included in this request and therefore the defendant can neither admit nor deny the matter.”
The requests to Dr. Park are comparable, and again the first three are illustrative:
RequestNo. 12: “Bradycardiais indicative ofaheart rate below sixty beats per minute.”
Request No. 13: “Bradycardia is a finding which may be concerning for ischemic stroke.”
Request No. 14: “On September 9 and September 10, 2011, you, Sujung Park, M.D. knew that raised blood pressure with bradycardia is an indicator of increasing intracranial pressure.”
To these comparable requests, Dr. Park typically responds, “OBJECTION. The defendant objects on the basis that this request requires a medical opinion.” Sometimes she adds, as indeed, she did in responding to requests 12 and 13, “[t]he defendant DENIES that Donald C. Morris was her patient on September 8, 2011.”
In her memorandum in opposition to the plaintiffs motion, Dr. Park insists, relying on her own reading of the pertinent rules but citing no case law, that Rule 36 “authorizes requests for admissions of the truth of matters which relate to statements or opinions of fact or the application of law to fact, including the genuineness of documents, not opinions.” In Dr. Park’s view, the plaintiff is seeking discovery of expert testimony which “may be obtained only” as outlined in Mass.R.Civ.P. 26(b)(4).
The court shall first address Dr. Park’s objection, then return to Dr. Ahmed’s. Because the Commonwealth’s Rule 36 “is patterned after Rule 36 of the Federal Rules of Civil Procedure” and this court is unaware of a Massachusetts appellate decision on point, it “turn[s] to Federal law.” Massachusetts Highway Dept. v. Smith, 51 Mass.App.Ct. at 618. As one Federal District Court put it, there is a “folklore within the bar which holds that requests for admission need not be answered if the subject matter of the request ‘is within plaintiffs own knowledge,’ ‘invades the province of the jury,’ ‘addresses a subject for expert testimony,’ or ‘presents a genuine issue for trial.’...[T]he folklore is wrong.” House v. Giant of Maryland, LLC, 232 F.R.D. 257, 262 (E.D.Va. 2005). Simply put, if the request falls within the scope of Rule 36, the party may not decline to answer simply because the subject is one for expert testimony. In Drutis v. Rand McNally & Co., 236 F.R.D. 325 (E.D.Ky. 2006), the plaintiffs objected to a request for admission on the grounds that it contained a hypothetical question which they said could only be answered in the form of opinion testimony by an expert witness, and that the plaintiffs were not experts and would not testify as experts. Id. at 329-30. However, the court held that the plaintiffs were required to answer after first consulting with their expert. Id. at 330. This court need not go so far, as the defendants are themselves medical doctors and propose to testify as experts. Presumably, even if they were ostensibly appearing only as fact witnesses, they could and likely would testify to such details as what they noted in the medical record, what symptoms they observed, what actions they took and why they took them, and other like matters.
Moreover, the court disagrees with Dr. Park’s argument that the pertinent requests for admissions typically ask for “opinions,” rather than “statements or opinions of fact.” For example, as to request no. 12, Bradycardia [the court infers that the plaintiff means the term, “Bradycardia”] either is or is not indicative of a heart rate below sixty beats per minute. The term has a defined medical meaning or meanings, just as “robbery” has a legal meaning to a lawyer or “primary color” has a meaning to an artist. All may be subject to qualification, but they are not matters of opinion in the sense that a request for an admission that a certain procedure is the best way to treat a certain condition, or that a particular action breached the duty of care calls for an opinion.
Returning to Dr. Ahmed’s repeated objection, that the request “is vague, ambiguous and subject to multiple interpretations, depending upon additional factors not included in th[e] request and therefore the *694 defendant can neither admit nor deny the matter,” the court concludes that such a response fails to comply with the requirements of Rule 36(a), which requires that if a matter is not admitted, the answer must specifically deny it or “set[ ] forth in detail why the answering party cannot truthfully admit or deny the matter.” At oral argument, the court inquired of counsel for Dr. Ahmed if she could provide examples of requests that were “vague, ambiguous, and subject to multiple interpretations” such that she was unable to respond with an admission or a denial. She cited but one, Request no. 62, which called on Dr. Ahmed to admit that on September 9, 2011 she “knew that nystagmus was a focal neurological deficit.” Counsel explained that there are two types of nystagmus, horizontal and vertical, and the answer may differ depending on which type is meant. Under such circumstances, the responding party could qualify her admission or denial appropriately, or she could explain, with the same level of precision employed by counsel in conversing with the court, why she could not fairly respond to the request for admission as phrased. Indeed, counsel’s oral argument response was more pithy than the boilerplate objection, although unlikely to be the sort of thing one could cut and paste with a word processor. In sum,
if Defendants found that the wording of Plaintiffs’ Requests for Admission were imprecise, Defendant should have “set forth a qualified answer that fairly [met] the substance of the request." House v. Giant of Maryland, 232 F.R.D. at 263 (finding that “[Requests for admission are not games of ‘Battleship’ in which the propounding party must guess the precise language coordinates the responding party deems answerable”). See also Susko v. City of Weirton, No. 5:09 CV1, 2010 WL 2521423, *2 (N.D.W.Va. June 21, 2010) (finding that “if [a] party [is] unable to agree with exact wording of request for admission, it should agree to an alternate wording or stipulation.” (Internal citations omitted) . . .
Baugh v. Bayer Corp. (unpublished decision), 2012 WL 4069582 *2 (D.S.C. 2012). But see Illes v. Beaven (unpublished decision), 2013 WL 522075 *4 & n.4 (M.D.Pa. 2013) (agreeing with the responding party that requests for admissions that “deal[t] with the symptoms and treatment of a number of medical conditions [and] the medical care that should be provided to inmates” were “too generalized and not tailored to the facts of the case,” and thus need not be answered). Accordingly, this court orders the defendants to provide supplemental answers within 20 days of the date of this opinion.[6]
In ruling on the motion before it, the court expresses no opinion on the admissibility of any response to a Request for Admission at trial.

 Superior Court Rule' 30A provides that: “All motions arising out of a party’s response to an interrogatory or a request for admission or arising out of a parly’s response to, or asserted failure to comply with, a request for production of documents shall be accompanied by a brief. With respect to each interrogatory or request at issue, the brief shall set forth separately and in the following order (1) the text of the interrogatory or request, (2) the opponent’s response and (3) an argument. Alternatively, the text of the interrogatory or request and the opponent’s response may be contained in an appendix to the brief.”

 The court acknowledges that another judge might well see it differently. After all, none of the requests at issue asks the defendant to admit that a statement constitutes the entire medical record. Requests for admission should be drafted so that the respondent can simply state “admit” or “deny,” and an assertion that something is stated in the medical record essentially conforms to the desired criteria. A request for admission is not an interrogatory, where the respondent has considerable leeway in shaping an answer to his own ends. In formulating a response, a Biblical admonition is pertinent: “Let your communication be Yea, yea, Nay, nay, for whatsoever is more than these cometh of evil.” Matthew 5:37 (King James Version). Permitting even a brief, seemingly innocuous qualification could be seen as the first step onto a slippery slope.

 The court’s ruling as set forth above is tightly focused on what Rule 36 requires. Dr. Park’s argument looks forward to the trial, and it may indeed be true that at trial, it is more efficient to introduce the medical record, or stipulated portions thereof, than to rely on the admissions. At trial, admissions have no evidentiary effect unless they are read into evidence, see S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass.App.Ct. 477, 479, cert. denied, 449 U.S. 1011 (1980), and even then, they are effective only as against the admitting party. Walsh v. McCain Foods Ltd., 81 F.3d 722, 726-27 (7th Cir. 1996); Gottlin v. Graves, 40 Mass.App.Ct. 155, 158 n.8 (1996). If the plaintiff proposes to read all admissions against both parties into evidence, the trial judge, in his discretion, might well encourage him to pursue an alternate route to proving his case. Some restrictions, as Justice Holmes once observed in another context, may be justified as “a concession to the shortness of life.” United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 230 (1940), quoting Reeve v. Dennett, 145 Mass. 23, 28 (1887). But one might imagine more targeted ways of using admissions, and in any case, their use at trial is an issue to be ruled upon, if at all, by the trial judge.

 This group comprises, as to Dr. Ahmed, requests 15, 16, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 33, 36, 37, 38, 39, 42, 44, 45, 46, 48, 49, 50, 51, 54, 55, 60, 62, 64, 66, 67, 68, 70, 72, 76, 79, 80, 81, 83, 84, 85, 89, 90, 91, 92, 93, and 94. As to Dr. Park, it comprises requests 12, 13, 14, 21, 22, 24, 26, 27, 28, 31, 32, 33, 34, 35, 36, 38, 39, 40, 46, 48, 50, 52, 54, 55, 58, 59, 60, 61, 64, 68, 69, 70, 71, 73, 74, 75, 76, 80, 84, 85, 86, 87, 91,93, 94, 95, 96, 97, 98, 101, 102, 103, and 104.

 However, Dr. Ahmed’s objections to Request No. 27, which asks her to admit that she “should take a leadership role in formulating treatment pathways,” and to Request No. 92, which asks her to admit that “a neurologist is better qualified to make a stroke diagnosis than ... a hospitalist,” are sustained.